**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Quicksilver Resources Inc., et al.,[1] | ) | Case No. 15-10585 (   ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (A) PAY
PRE-PETITION EMPLOYEE WAGES, OTHER COMPENSATION,
AND REIMBURSABLE EMPLOYEE EXPENSES AND
(B) CONTINUE EMPLOYEE BENEFITS PROGRAMS**

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully submit this *Debtors' Motion for Entry of Interim and Final Orders Authorizing, But Not Directing, the Debtors To (A) Pay Pre-petition Employee Wages, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs* (the "Motion"). In support of the Motion, the Debtors represent and set forth as follows:[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Quicksilver Resources Inc. [6163]; Barnett Shale Operating LLC [0257]; Cowtown Drilling, Inc. [8899]; Cowtown Gas Processing L.P. [1404]; Cowtown Pipeline Funding, Inc. [9774]; Cowtown Pipeline L.P. [9769]; Cowtown Pipeline Management, Inc. [9771]; Makarios Resources International Holdings LLC [1765]; Makarios Resources International Inc. [7612]; QPP Holdings LLC [0057]; QPP Parent LLC [8748]; Quicksilver Production Partners GP LLC [2701]; Quicksilver Production Partners LP [9129]; and Silver Stream Pipeline Company LLC [9384]. The Debtors' address is 801 Cherry Street, Suite 3700, Unit 19, Fort Worth, Texas 76102.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' restructuring, are set forth in greater detail in the Declaration of Vanessa Gomez LaGatta in Support of First Day Pleadings (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).[3]

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested herein are Bankruptcy Code sections 105(a), 362, 363, and 507(a)(4)-(5) and Rules 4001(d), 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**A.      General Background**

4.      On March 17, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  No committees have been appointed or designated.

5.      This Motion incorporates by reference the facts set forth in the First Day Declaration as if fully set forth herein.  Additional facts specific to this Motion are set forth below.

---

[3] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

**B.    Specific Background**

> *(a)    Overview of Debtors' Workforce*

6.    As of the Petition Date, the Debtors employ approximately 215 people in the United States across their various operations (collectively, the "Employees"), all of which are employed and compensated by Debtor Quicksilver Resources Inc.[4]   The Debtors provide a variety of compensation and benefits to their Employees, all of which is more fully described below (collectively, the "Employee Obligations").   In addition, at any given time, the Debtors supplement their business needs and workforce with a variable number (typically five to ten) of independent contractors (each an "Independent Contractor" and collectively, the "Independent Contractors") that provide services in a number of different business areas.[5]

7.    The Employees and Independent Contractors perform a variety of critical functions, including the acquisition, exploration, development, and production of onshore oil and gas, sales, customer service, purchasing, repair and maintenance, information and technology, and a variety of administrative, accounting, legal, finance, management, supervisory, personnel management, and other related tasks.   Their skills, knowledge, and understanding with respect to

---

[4] In addition to the Debtors' Employees in the United States, Quicksilver Resources Canada Inc. ("QRCI") employs approximately eighty people in Canada and uses a significant number of independent contractors (the "Canadian Employees and Independent Contractors").   The Canadian Employees and Independent Contractors are not subject to this Motion.

[5] Notably, Thomas F. Darden, the Debtors' former Chairman, remains a consultant and Independent Contractor.   Specifically, in May 2013, the Debtors entered into an agreement with Mr. Darden with respect to Mr. Darden's retirement and provision of consulting services following his retirement.   Effective May 15, 2013, Mr. Darden retired from his executive position and remained an employee through December 31, 2013 and a member of the Board of Directors as Chairman Emeritus until August 31, 2014, when he retired from the Board of Directors. Mr. Darden is currently engaged as a consultant for the three-year period following his retirement and receives a monthly consulting fee of $45,000, an office allowance of $12,500 per month and additional reimbursements with respect to certain business expenses.   In addition, Mr. Darden is eligible to receive bonuses of up to $2.5 million in the aggregate under certain circumstances in connection with certain possible future strategic transactions occurring on or before December 31, 2016.   For the avoidance of doubt, the Debtors are not seeking to pay Mr. Darden any amounts by this Motion.

the Debtors' operations, customer relations, and infrastructure are essential to maintaining the Debtors' business as a going concern during these cases.

8.　　　Just as the Debtors depend on the Employees and Independent Contractors to operate their business on a daily basis, those individuals also depend on the Debtors. Indeed, the vast majority of these individuals rely exclusively on payments from the Debtors for their basic living necessities.

　　　　　　(b)　　　*Overview of the Employee Obligations*

9.　　　The following table contains descriptions of the Employee Obligations and the Debtors' estimates of the amount of Employee Obligations accrued but unpaid as of the Petition Date and, of the unpaid Employee Obligations, the amounts due in the ordinary course of business within 21 days of the Petition Date.

| Category | Description | Approximate Amount Accrued as of Petition Date | Approximate Amount Due Within 21 Days of Petition Date |
|---|---|---|---|
| Employee Compensation | Employee compensation consists of amounts owed to the Employees pursuant to their individual terms of employment and under applicable law (as more fully described herein, the "Employee Compensation"). Employee Compensation includes, as applicable, wages and salaries earned in the ordinary course of business, but does not include Severance Obligations, Reimbursable Expenses, Vacation Time, Sick Time (each as defined below), or the value of the non-cash benefits described herein.<br><br>All Employees are salaried, both exempt and non-exempt, and paid current on a semi-monthly basis.[6] The Debtors estimate that the average aggregate cost of Employee Compensation is $2.1 million per month. The most recent payroll occurred on March 13, 2015. As a | $140,000 | $140,000 |

---

[6] Overtime payments due to non-exempt Employees are not paid current, but rather are paid 15 days in arrears.

| | | | |
|---|---|---|---|
| | result, two business days of pre-petition Employee Compensation – approximately $140,000 – has accrued but is unpaid as of the Petition Date. | | |
| Independent Contractor Compensation | The Independent Contractors are compensated as the need arises for their services in the ordinary course of business (the "Independent Contractor Compensation"). Independent Contractor Compensation is paid through the Debtors' accounts payable system, with an average aggregate cost of $20,000 per month. As of the Petition Date, the Debtors estimate that approximately $13,200 in Independent Contractor Compensation had accrued but remained unpaid. | $24,365 | $24,365 |
| Director Compensation | The Debtors have eight directors (collectively, the "Directors"). Directors who also serve as the Debtors' executive officers do not receive any additional compensation for their service as Directors. The non-Employee Directors receive cash and/or equity, with the amount of each being determined pursuant to an individual election. Currently, on an annual basis, all non-Employee Directors receive (i) $106,000 in cash,[7] which is payable quarterly at the regular quarterly board meeting, and (ii) $99,000 of restricted stock that vests over three years on each of the first three anniversaries of the grant date (the "Director Compensation"). As of the Petition Date, the Debtors do not owe any amounts relating to pre-petition Director Compensation.[8] | $0 | $0 |
| Bonus Program | Prior to the Petition Date, the Debtors maintained a discretionary bonus program (the "Bonus Program"). The Debtors are not seeking to continue the Bonus Program on a post-petition basis by this Motion.[9] | N/A | N/A |
| Withholdings and Payroll Taxes | During each pay period, the Debtors routinely withhold certain amounts from the gross pay of Employees, including Employee contributions to retirement savings plans, health benefits plans, employment insurance, garnishments, child support, personal insurance premiums, and similar withholdings (collectively, the | $82,000 | $82,000 |

---

[7] Each year, the non-Employee Directors have the option to elect to receive options or restricted shares in lieu of all or a portion of the cash payment. For 2015, none of the non-Employee directors have made this election.

[8] While the Debtors believe that payment of post-petition Director Compensation is an ordinary course payment that can be made without Court approval, the Debtors, out of an abundance of caution, seek authority to continue paying Director Compensation in the ordinary course of business upon entry of the Final Order.

[9] The Debtors made certain prepetition payments under the Bonus Program, but no amounts are due and owing as of the Petition Date and no further amounts will be paid, including to "insiders" (as that term is defined in Bankruptcy Code section 101(31)), absent an appropriate motion.

| | | | |
|---|---|---|---|
| | "Withholdings"), which either the Debtors or a third-party service provider then forwards to the appropriate recipients.  The Debtors estimate that the Withholdings total approximately $295,000 per month.  The Debtors believe that, as of the Petition Date, the only Withholdings that have not been remitted are those that accrued during the two business days since the last payroll on March 13, 2015, and are seeking authority to remit those amounts when appropriate.  To the extent that any other Withholdings have been collected and not remitted, the Debtors similarly seek authority to remit those amounts.<br><br>In addition to the Withholdings, the Debtors are required by law to withhold amounts from wages of certain Employees that are related to federal, state, and local income taxes, including social security and Medicare taxes, and employment insurance for remittance to the appropriate taxing and other governmental authorities (collectively, the "Payroll Taxes").   The Debtors estimate that the Payroll Taxes total approximately $750,000 per month, including employer amounts due.  The Debtors believe that, as of the Petition Date, the only Payroll Taxes that have not been remitted are those that accrued during the two business days since the last payroll on March 13, 2015, and are seeking authority to remit those amounts when appropriate.  To the extent that any other Payroll Taxes have been collected and not remitted, the Debtors similarly seek authority to remit those amounts. | | |
| Reimbursable Expenses and Credit Card Program | The Debtors routinely reimburse certain Employees and Directors from accounts payable for business-related expenses, such as travel, meals, cellular telephone, automobile mileage, fuel, and other expenses (the "Reimbursable Expenses").    In certain instances, Employees are given corporate credit cards to pay for work-related expenses.  Currently, forty-one Employees have been issued a Wells Fargo MasterCard.  Amounts charged to these accounts are billed directly to the Debtors.  Other Employees pay for the Reimbursable Expenses in the first instance using their personal funds or credit cards and then submit the expenses to the | Unknown[10] | Unknown |

---

[10] Based on historical figures, the Debtors estimate that the Reimbursable Expenses total approximately $20,000 per month.  Although the Debtors ask that Employees and Directors promptly submit their reimbursement requests, not all of them are able to do so. In fact, it is likely that Employees and Directors will submit requests for pre-petition expenses after the Petition Date.  Thus, the Debtors are unable to provide a detailed amount of unpaid pre-petition expenses at this time.

| | | | |
|---|---|---|---|
| | Debtors for reimbursement. Reimbursable Expenses are not fringe benefits to be considered as part of an Employee's compensation; rather, they are reimbursements for out-of-pocket expenses incurred by Employees in the performance of their duties on behalf of the Debtors for the Debtors' benefit. | | |
| Severance Obligations | With certain exceptions, all regular, full or part time Employees working a minimum of twenty hours per week that are not (i) terminated for cause, (ii) entitled to separate severance benefits under an individual agreement, or (iii) employed pursuant to a written employment contract are eligible to receive severance under the Debtors' severance benefit plan (the "Severance Plan").  Under the Severance Plan, eligible Employees receive one week of their base pay as of the date of termination for each full year of service with the Debtors and a prorated amount for any partial year of service.  As of the Petition Date, the Debtors believe that there are no unpaid amounts due under the Severance Plan.  The Debtors are not seeking to continue the Severance Plan on a post-petition basis at this time.[11]<br><br>The Debtors have a separate contingent severance liability of up to $62,288.40 (the "Severance Obligations").  Pre-petition, certain Employees that were subject to a planned reduction in force were offered additional severance benefits in exchange for executing an appropriate release.   Under applicable federal law, certain of these former Employees have forty-five days to determine if they will accept the severance and grant the release.  By this Motion, the Debtors seek authority to honor the Severance Obligations to the extent that any come due, *provided that* the Debtors will not make any payments in excess of the $12,475 statutory cap.<br><br>The Debtors also have in place change in control retention incentive plans for executives, key employees, and staff (collectively, the "Change in Control Plans").  The Debtors are not seeking to make any payments under the Change in Control Plans at this time and no amounts are due and owing thereunder as of the Petition Date. | Up to $62,288.40 | $0 |

---

[11] For the avoidance of doubt, the Debtors will not pay any bonus, retention or severance payments to "insiders" (as that term is defined in Bankruptcy Code section 101(31)) without first seeking appropriate relief from this Court.

| | | | |
|---|---|---|---|
| Vacation Time | The Debtors provide their Employees with paid vacation time (the "Vacation Time").  The Debtors' policies provide that the amount of Vacation Time available to Employees and the rate at which such Vacation Time accrues is generally determined by the Employee's length of employment with the Debtors and years of relevant industry and technical experience, with most Employees receiving between three and five weeks of Vacation Time per year.  Ordinarily, when an Employee elects to take Vacation Time, that Employee is paid his or her regular hourly or salaried rate for such time.  Generally, Employees may carry five unused days of Vacation Time into the next year, but those five days must be used during the first quarter of the that year.  If an Employee ceases to be employed by the Debtors, the Employee's final paycheck will include any accrued but unused Vacation Time (including any permitted rollover from the prior year) for the current year.[12]<br><br>Employees also receive two weeks of sick time (the "Sick Time") every year.  Each Employee's yearly allotment of Sick Time accrues over the course of the year, but the full two weeks is usable at the beginning of the year.  Sick Time may not be rolled over into the next calendar year and it is not paid out at separation.<br><br>By this Motion, the Debtors seek authority to continue their Vacation Time and Sick Time policies in the ordinary course of business on a post-petition basis, *provided that* (i) each Employee will be required to use any post-petition Vacation Time first, with any accrued pre-petition Vacation Time to be applied thereafter and (ii) all requests for Vacation Time and Sick Time must be coordinated and approved by the applicable Employee's supervisor, consistent with past practices, to ensure no disruption to the Debtors' ongoing business operations.[13] | $550,000[14] | Unknown |
| Medical | The Debtors offer a number of insurance and benefits programs, including, among other things, self-funded[15] | $1,407,350 | $372,150 |

---

[12] Under their "re-energize" program, the Debtors provide an additional two weeks of Vacation Time to Employees for every five years of accrued service time.  Vacation Time awarded under the re-energize program is not paid out at separation.

[13] For the avoidance of doubt, the Debtors are not seeking blanket authority to cash out accrued pre-petition Vacation Time or to otherwise deviate from their pre-petition policies.

[14] This amount is not a current cash payment obligation, as Employees are only entitled to cash payment for accrued and unused Vacation Time if the Employee ceases to be employed by the Debtors.

| Benefits | health and dental plans administered by CIGNA; a fully insured vision plan administered by VSP; a prescription drug benefit administered by CVS Caremarek; flexible spending accounts administered by TASC; and other employee benefit plans (collectively, the "Medical Benefit Plans"). <br><br> The Debtors estimate that the monthly cost of the Medical Benefit Plans, including administrative fees, claims paid under the self-insured medical, dental and prescription drug plans, Stop Loss Insurance, and the premium for the vision plan, is $460,500. <br><br> In addition to the foregoing, the Debtors have in place miscellaneous practices, programs, and policies that provide benefits and protections to Employees, including Family Medical Leave Act benefits, COBRA, and an employee assistance program (collectively, the "Other Medical Programs"). The Debtors believe that the Other Medical Programs are important to maintaining Employee morale and assisting in the retention of the Debtors' workforce. The monthly cost of such programs for the Debtors is negligible in the context of the Debtors' aggregate compensation and benefit obligations. The Debtors believe that failing to honor expected benefits under such Other Medical Programs would have an adverse effect on the Employees. | | |
|---|---|---|---|
| Workers' Compensation | The Debtors provide workers' compensation insurance for Employees at the statutorily required level for each applicable state. Additionally, in accordance with state law, the Debtors provide workers' compensation coverage to the Employees under state-administered workers' compensation programs. The Debtors are insured through Berkley National Insurance Company and pay annual premiums in the amount of $146,000. Because the premiums are prepaid, the Debtors estimate that no amounts are outstanding as of the Petition Date. | $0 | $0 |
| Life, Disability, and Accident | The Debtors provide a number of different types of additional insurance benefits to their Employees, including basic life and accidental death and dismemberment, voluntary life and accidental death and | $14,750 | $14,000 |

---

[15] Although many of the Medical Benefit Plans are self-funded by the Debtors, the Debtors maintain stop-loss insurance to protect against catastrophic or unpredictable losses (the "Stop Loss Insurance"). Gerber Insurance Group provides the Debtors' Stop Loss Coverage at a cost of $27,000 per month. The premium for a given month is generally received and paid during that month. As of the Petition Date, the March 2015 premium has not yet been paid.

| Insurance | dismemberment, long-term care, short-term disability, and long-term disability. The life, accidental death and dismemberment, and disability programs are administered by CIGNA. The long-term care benefit is administered by UNUM. With the exception of short-term disability, which is self-funded, all such insurance plans are fully insured, meaning the Debtors pay the applicable insurance carriers a set premium on a monthly basis, and the carrier pays the Employees' claims according to the applicable policy terms. The Debtors estimate that the average monthly cost of these insurance programs is $29,500. | | |
|---|---|---|---|
| Retirement Savings Plan | The Debtors maintain, for all eligible full-time U.S. Employees, a qualified defined contribution plan that meets the requirements of sections 401(a) and 401(k) of the Internal Revenue Code (the "Employee Retirement Plan") administered by Milliman Benefits, as follows:<br><br>• Generally, eligible Employees can contribute eligible compensation, through payroll deductions, on a pre-tax basis, up to the limits imposed on those contributions under the Employee Retirement Plan and Internal Revenue Code. In 2014, Employees contributed approximately $1.9 million to the Employee Retirement Plan.<br><br>• Employees are eligible to receive a matching employer contribution of up to 4% of eligible earnings. In addition, the Debtors are required to make a yearly contribution to the Employee Retirement Plan of 3% of eligible earnings (the "Yearly Contribution"). Unless notice is provided at least thirty days in advance of the new plan year, the Yearly Contribution becomes mandatory and is generally made during the first quarter of the next calendar year (i.e., the 2015 contribution will not be made until the first quarter of 2016).<br><br>• The Debtors' average monthly matching contributions to the Employee Retirement Plan total $81,000. As of the Petition Date, the Debtors estimate that their outstanding obligations on account of matching contributions total approximately $6,000. The Yearly Contribution for 2014 has already been made and the Yearly Contribution for 2015 will not be due until 2016. | $6,000 | $6,000 |

|  |  |  |  |
|---|---|---|---|
|  | • Milliman Benefits receives a monthly fee of approximately $7,000 for administering the Employee Retirement Plan. These fees are first paid out of Employee Retirement Plan forfeitures and then by the Debtors. As of the Petition Date, the Debtors believe that there are sufficient forfeitures to cover any outstanding pre-petition fees. Out of an abundance of caution, however, the Debtors request authority to pay any amounts owed to Milliman Benefits that are not covered by forfeitures. |  |  |
| Payroll Costs | The vast majority of the Debtors' wage obligations are satisfied by direct deposit through the electronic transfer of funds from the Debtors' payroll department directly to each Employee's bank account, with the remainder of Employees receiving checks. The Debtors handle payroll management internally and outsource the payroll processing operation to Ceridian. Ceridian bills the Debtors for its services – approximately $2,500 – after each semi-monthly pay period. As of the Petition Date, the Debtors estimate that approximately $3,500 is due to Ceridian for payroll services that have accrued but are unpaid. | $3,500 | $3,500 |
| Miscellaneous Employee Benefits | In addition to the benefit plans described above, the Debtors are currently aware of, and may discover other, *de minimis* pre-petition obligations owed with respect to their Employees (the "Miscellaneous Benefits Programs"). For example, the Debtors provide reimbursement for certain relevant education expenses, including for tuition, fees, and textbooks. Importantly, Employees are only reimbursed education for these expenses if the course is approved and the Employee meets certain grade requirements. Currently, five employees are taking an approved course, with reimbursable costs expected to be approximately $20,000.<br><br>Some of the Employees may have incurred expenses in connection with the Miscellaneous Benefit Programs prior to the Petition Date, but have not yet sought reimbursement therefor. In most, if not all, such instances, the Employees incurred such expenses based on the Debtors' policies and their eligibility to participate in the Miscellaneous Benefit Programs. | $40,000 | $0 |

10.     The Debtors estimate that of the Employee Obligations described above, approximately $1.79 million constitutes actual cash obligations owed to, or on account of, their Employees.

## RELIEF REQUESTED

11.     The Debtors submit this Motion pursuant to Bankruptcy Code sections 105(a), 362, 363, and 507(a)(4)-(5) and Bankruptcy Rules 4001(d), 6003, 6004, 7062 and 9014 for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order," respectively) authorizing, but not directing, the Debtors, in a reasonable exercise of their business judgment, (a) to pay pre-petition (i) wages, salaries, and other compensation up to $12,475 per individual Employee and (ii) reimbursable employee expenses, and (b) to continue the employee benefits programs and pay any amounts due thereunder, all as more fully described and as limited above.

12.     The Debtors further request that the Court authorize their banks and other financial institutions to honor checks and/or other funds transfer requests issued prior to the Petition Date for payment of any Employee Obligations.  The Debtors also request that the Court schedule a hearing (the "Final Hearing") on the entry of the Final Order within thirty days of the date hereof or as soon thereafter as practicable; *provided, however*, that, in the event that no objections to entry of the Final Order are timely received, the Debtors request that the Court enter the Final Order without need for the Final Hearing.

## SUPPORTING AUTHORITY

13.     To maintain their operations and preserve the value of their estates, it is essential that the Debtors continue to operate, to the extent possible, in the ordinary course of their business.  To achieve that result, the Debtors must retain the uninterrupted service and loyalty of their Employees.  The maintenance and continuation of employee programs, as well as the

payment of amounts owing in respect thereof, is essential to this goal. Accordingly, the Debtors submit that the relief requested herein is critical to their ability to operate effectively and to preserve the value of their estates throughout these chapter 11 cases and, therefore, is in the best interests of the Debtors, their estates, and their creditors.

**A.      The Court Should Authorize the Debtors To Honor Their Employee Obligations**

> *(a)      Certain of the Employee Obligations Are Entitled to Priority Treatment*

14.      Pursuant to Bankruptcy Code sections 507(a)(4) and (5), certain of the unpaid pre-petition Employee Obligations—including unpaid Employee Compensation and Employee Retirement Plan obligations—are entitled to priority treatment in an amount up to $12,475 for each individual Employee. To the extent that such claims are afforded priority status, the Debtors must pay these claims in full prior to payment of general unsecured creditors under a plan. *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan); 11 U.S.C. § 507(a)(4) (providing that allowed unsecured claims for "(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor . . ." up to $12,475 per individual are entitled to a fourth priority ahead of general unsecured claims); 11 U.S.C. § 507(a)(5) (providing that "allowed unsecured claims for contributions to an employee benefit plan . . . ," with offsets for payments made under section 507(a)(4), are entitled to a fifth priority).

15.      In addition, the Debtors are not seeking authority to pay unpaid Employee Compensation, Severance Obligations or Employee Retirement Plan obligations attributable to pre-petition obligations in amounts that exceed $12,475 in the aggregate per Employee or

Independent Contractor, as calculated under Bankruptcy Code section 507(a)(4)-(5). Accordingly, granting the relief sought with respect to compensation will affect only the timing of payments to Employees and Independent Contractors and will not have any material negative impact on recoveries for general unsecured creditors. Indeed, the Debtors submit that payment of unpaid obligations to Employees and Independent Contractors up to $12,475 per individual will enhance value for the benefit of all stakeholders because it will help ensure that the Employees and Independent Contractors—the lifeblood of the Debtors' business operations— will continue to provide vital services to the Debtors at this critical juncture. In addition, to the extent that the Debtors are authorized, in a reasonable exercise of their business judgment, to pay pre-petition Employee Obligations on a post-petition basis in the ordinary course of business, such payments will enhance the value of the Debtors' estates by preserving the going-concern value of the Debtors' business for all stakeholders.

>        (b)        *Payment of Certain of the Employee Obligations Is Required by Law*

16.        The Debtors also seek authority to pay Withholdings and Payroll Taxes to the appropriate entities. These amounts principally represent Employee earnings that Employees, governments, and judicial authorities have designated for withholding from Employees' paychecks. Indeed, certain withholdings, including child support and alimony payments, are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(7) and (d).

17.        Further, applicable U.S. federal and state laws require the Debtors to withhold certain tax payments from Employees' paychecks and to pay such amounts to the appropriate taxing authority. *See* 26 U.S.C. §§ 6672 and 7501(a); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–96 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the

city for payment of withheld income taxes); *Ducharmes & Co. v. Michigan (In re DuCharmes & Co.)*, 852 F.2d 194, 195–96 (6th Cir. 1988) (per curiam) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because the Unremitted Withholdings and Payroll Taxes are not property of the Debtors' estates, the Debtors request that the Court authorize the Debtors to transmit the Unremitted Withholdings and Payroll Taxes to the proper parties in the ordinary course of business.

> (c)    *Failure to Pay Certain of the Employee Obligations Would Cause the Debtors' Estates To Incur Additional Liabilities*

18.    With respect to the workers' compensation program, the Debtors have determined that continued participation in such program is the most efficient means of continuing to provide mandatory workers' compensation coverage, and attempting to provide this coverage without participating in the workers' compensation program would be extremely risky.  If the Debtors fail to honor their statutory obligation to provide workers' compensation coverage to their Employees, state laws may prohibit the Debtors from operating in those states.  Payment of all unpaid workers' compensation and other amounts under the workers' compensation program as they become due is therefore crucial to the preservation of the value of the Debtors' business.

**B.    The Severance Obligations Are Not Limited by the Requirements of Bankruptcy Code Section 503(c)**

19.    Bankruptcy Code section 503(c)(1) restricts retention payments to insiders.  *See* 11 U.S.C § 503(c)(1) and (2) (prohibiting transfers or obligations made to an insider for the purpose of severance or inducing such person to remain with the debtor's business, absent certain explicit findings by the court).  The Debtors, however, are not seeking authority to make such payments to insiders by this Motion.  Accordingly, Bankruptcy Code section 503(c)(1)-(2) does not apply to these obligations, and the Debtors are not required to meet any burden

thereunder (*e.g.,* that the programs are not severance or retention programs and/or satisfy the requirements of Bankruptcy Code sections 503(c)(l)(A)–(C) and (2)).

20.    Moreover, Bankruptcy Code section 503(c)(3) provides that "there shall be neither allowed, nor paid . . . other transfers or obligations outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers (or) managers . . . ."  11 U.S.C. § 503(c)(3). The Debtors believe that payment of the Severance Obligations up to the statutory cap is not outside the ordinary course of business.  To the extent, however, that any such payments are subject to Bankruptcy Code section 503(c)(3)'s restrictions, the Debtors do not seek authority to make such a payment in this Motion, but reserve their right to seek such authority in the event that any such payment is justified by the facts and circumstances of these cases.

**C.    Payment of the Employee Obligations Is Warranted Under the Doctrine of Necessity**

21.    Courts in this jurisdiction and others generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain pre-petition obligations.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "[i]f payment of a pre-petition claim 'is essential to the continued operation of [the debtor], payment may be authorized'")); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding sound business justification for payment of certain pre-petition claims); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) (holding that "section 363 is a source for authority to make critical vendor payments, and

16

section 105 is used to fill in the blanks").  When authorizing such payments, courts have relied

upon several legal theories rooted in Bankruptcy Code sections 1107(a), 1108, 363(b), and

105(a).

22.    Pursuant to Bankruptcy Code sections 1107(a) and 1108, a debtor-in-possession is

a fiduciary charged with "holding the bankruptcy estate and operating the business for the benefit

of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487,

497 (Bankr. N.D. Tex. 2002).  Inherent in a debtor-in-possession's fiduciary duties is the

obligation to "protect and preserve the estate, including an operating business's going-concern

value," which, in certain instances, can be fulfilled "only . . . by the preplan satisfaction of a

prepetition claim." *Id.*  Indeed, the *CoServ* court specifically noted that the pre-plan satisfaction

of pre-petition claims would be a valid exercise of the debtor's fiduciary duty when the payment

"is the only means to effect a substantial enhancement of the estate . . . ." *Id.*  Consistent with a

debtor's fiduciary duties, where there is a sound business purpose for the payment of pre-petition

obligations, and where the debtor is able to "articulate some business justification, other than the

mere appeasement of major creditors," courts have authorized debtors to make such payments

under Bankruptcy Code section 363(b).  *In re Ionosphere Clubs, Inc.* 98 B.R. at 175 (finding that

a sound business justification existed to pay pre-petition wages); s*ee also Armstrong World

Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y.

1983) (relying upon section 363 as a basis to allow a contractor to pay the pre-petition claims of

suppliers who were potential lien claimants).

23.    Courts have also authorized payment of pre-petition claims in appropriate

circumstances pursuant to Bankruptcy Code section 105(a).  Bankruptcy Code section 105(a),

which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy

court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may permit pre-plan payments of pre-petition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a pre-petition obligation would trigger a withholding of services essential to the debtors' business reorganization plan. *See In re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay pre-petition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *In re Ionosphere Clubs, Inc.*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor).

24.     In addition to the authority granted a debtor-in-possession under Bankruptcy Code sections 1107(a), 1108, 363(b), and 105(a), courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286, 310 (1882). Since *Miltenberger*, courts have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization, including the United States Court of Appeals for the Third Circuit which recognized the doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581–82 (3d Cir. 1981). *See also Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization matter, that the court was not "helpless" to apply the rule to supply creditors where the alternative was the cessation of operations).

25.     In *In re Lehigh & New England Ry. Co.*, the Third Circuit held that a court could authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor. *See id.* at 581 (noting that courts may authorize payment of pre-petition

claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (noting that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay pre-petition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

26.    Today, the rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *see also In re Just for Feet, Inc.*, 242 B.R. at 826 (finding that payment of pre-petition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of pre-petition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (finding that it is appropriate to provide for the "unequal treatment of pre-petition debts when [such treatment is] necessary for rehabilitation . . ."); 2 COLLIER ON BANKRUPTCY ¶ 105.02[4][a] (16th ed. rev. 2011) (discussing

cases in which courts have relied upon the doctrine of necessity or the necessity of payment rule to pay pre-petition claims immediately).

27.     The relief requested herein will benefit the Debtors' estates and creditors by allowing the Debtors' business operations to continue without interruption while the Debtors seek to restructure their business.  In the absence of such payments, the Debtors believe that their Employees and Independent Contractors may immediately seek alternative employment opportunities.  Such a development would deplete the Debtors' workforce, hinder the Debtors' ability to meet their customer obligations, and diminish customers' confidence in the Debtors. Moreover, the loss of valuable individuals and the recruiting efforts that would be required to replace them would be a massive and costly distraction at a time when the Debtors should be focusing on the chapter 11 cases.

28.     The importance of a debtor's employees to its operations has been recognized by courts in this district in granting relief similar to the relief requested herein.  Indeed, courts in this jurisdiction have approved relief similar to the relief requested in this Motion.  *See, e.g., See, e.g., In re Endeavour Operating Corp.*, No. 14-12308 (KJC) (Bankr. D. Del. Oct. 15, 2014 and Nov. 7, 2014) (D.I. 55, 161); *In re Phoenix Payment Systems, Inc.*, No. 14-11848 (MFW) (Bankr. D. Del. Aug. 5, 2014) (D.I. 37); *In re USEC Inc.*, No. 14-10475 (CSS) (Bankr. D. Del. Mar. 7, 2014) (D.I. 54); *In re Quantum Foods, LLC*, No. 14-10318 (KJC) (Bankr. D. Del. Feb. 20, 2014 and Mar. 12, 2014) (D.I. 39, 121); *In re Event Rentals, Inc.*, No. 14-10282 (PJW) (Bankr. D. Del. Feb. 18, 2014) (D.I. 42); *In re Constar International Holdings LLC*, No. 13-13281 (CSS) (Bankr. D. Del. Dec. 20, 2013 and Jan. 9, 2014) (D.I. 60, 169); *In re F&H Acquisition Corp.*, No. 13-13220 (KG) (Bankr. D. Del. Dec. 17, 2013) (D.I. 54); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013 and Dec. 6,

2013) (D.I. 42, 105); *In re EWGS Intermediary, LLC*, No. 13-12876 (MFW) (Bankr. D. Del.

Nov. 5, 2013 and Dec. 3, 2013) (D.I. 40, 147); *In re Velti Inc*., No. 13-12878 (PJW) (Bankr. D.

Del. Nov. 5, 2013 and Dec. 2, 2013) (D.I. 23, 114); *In re NE OPCO, Inc.*, No. 13-11483 (CSS)

(Bankr. D. Del. June 6, 2013 and July 11, 2013) (D.I. 36, 150).[16]

29.     To facilitate the implementation of the requested relief, the Debtors further

request that the Court authorize all banks to receive, process, honor, and pay any and all checks

drawn or electronic fund transfers from the Debtors' accounts whether such checks or transfer

requests were presented before or after the Petition Date, to the extent that such checks or

electronic fund transfers are expressly identified by the Debtors as relating directly to the

authorized payments with respect to Employee Obligations.  The Debtors also seek authority to

issue new post-petition checks or electronic fund transfer requests that may be dishonored or

rejected as a result of the entry of an order for relief.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

30.     For a debtor to obtain relief to make pre-plan payments within 21 days of the

Petition Date, it must establish that making such payments satisfies the requirements mandated

by Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and

irreparable harm."  If a debtor's prospect of reorganizing is threatened, or swift diminution in

value of the debtor's estate is likely, absent the granting of the requested relief, immediate and

irreparable harm likely exists.  *See In re WorldSpace, Inc.*, No. 08–12412-PJW, 2008 WL

8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (granting emergency motions for post-petition

financing, adequate protection, and modification of the stay where the court found that the relief

---

[16] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

was necessary to avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operations of the debtors' businesses); *In re New World Pasta Co.*, No. 04–02817-MDF, 2004 WL 5651052, at *5 (Bankr. M.D. Pa. July 9, 2004) (same); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate and irreparable harm" exists where loss of the business threatens ability to reorganize).

31.    Immediate and irreparable harm would result if the relief requested herein were not granted.  As described above, the Debtors' Employees and Independent Contractors are integral to their operations.   Failure to satisfy obligations to Employees and Independent Contractors in the ordinary course of business will jeopardize loyalty and trust, possibly causing Employees and Independent Contractors to leave the Debtors' employ and thereby disrupting the Debtors' operations.   Moreover, the Debtors' Employees and Independent Contractors rely on the Debtors' timely payment of their compensation and provision of benefits for their livelihood. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of their Employee Obligations.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

32.    Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the fourteen-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable.

## DEBTORS' RESERVATION OF RIGHTS

33.    Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365.  Likewise, if this Court grants the relief sought herein, any payment made pursuant

to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## **NOTICE**

34.     No trustee, examiner, or creditors' committee has been appointed in the Debtors' chapter 11 cases.  The Debtors have provided notice of this Motion to (a) the Office of the United States Trustee for the District of Delaware, Attn:  Jane Leamy, Esq.; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agents under the Debtors' pre-petition credit facilities; (d) counsel to the Ad Hoc Group of Second Lienholders; (e) counsel to the indenture trustees under the Debtors' pre-petition indentures; (f) the United States Securities and Exchange Commission; (g) the United States Internal Revenue Service; and (h) any parties entitled to notice pursuant to Local Rule 9013-1(m).  In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Interim Order, substantially in the form annexed as **Exhibit A** hereto, granting the relief requested in the Motion, (b) schedule a final hearing on the Motion within thirty days of the Petition Date or as soon as is otherwise practicable thereafter to consider entry of the Final Order substantially in the form annexed as **Exhibit B** hereto, and (c) grant such other and further relief as may be just and proper.

Wilmington, Delaware
Date: March 17, 2015                                    */s/ Paul N. Heath*

                                      **RICHARDS, LAYTON & FINGER, P.A**.
Paul N. Heath (DE 3704)
Amanda R. Steele (DE 5530)
Rachel L. Biblo (DE 6012)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

– and –

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Charles R. Gibbs (*pro hac vice* motion pending)
Sarah Link Schultz (*pro hac vice* motion pending)
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone:  (214) 969-2800
Facsimile:  (214) 969-4343

Ashleigh L. Blaylock (*pro hac vice* motion pending)
Kevin M. Eide (*pro hac vice* motion pending)
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

**PROPOSED COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION**

**<u>Exhibit A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Quicksilver Resources Inc., et al.,[1] | ) | Case No. 15-10585 (   ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

## INTERIM ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (A) PAY PRE-PETITION WAGES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of this Interim Order pursuant to Bankruptcy Code sections 105(a), 362, 363, and 507(a)(4)-(5) and Bankruptcy Rules 4001(d), 6003, 6004, 7062, and 9014 (a) authorizing, but not directing, the Debtors to pay pre-petition (i) wages, salaries, and other compensation, (ii) reimbursable employee expenses, and (iii) employee medical and similar benefits; (b) authorizing, but not directing, the Debtors to continue employee benefits programs and any amounts due thereunder; and (c) scheduling a Final Hearing to the extent that a hearing is necessary, all as further described in the Motion; and the Court having jurisdiction to consider this Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Quicksilver Resources Inc. [6163]; Barnett Shale Operating LLC [0257]; Cowtown Drilling, Inc. [8899]; Cowtown Gas Processing L.P. [1404]; Cowtown Pipeline Funding, Inc. [9774]; Cowtown Pipeline L.P. [9769]; Cowtown Pipeline Management, Inc. [9771]; Makarios Resources International Holdings LLC [1765]; Makarios Resources International Inc. [7612]; QPP Holdings LLC [0057]; QPP Parent LLC [8748]; Quicksilver Production Partners GP LLC [2701]; Quicksilver Production Partners LP [9129]; and Silver Stream Pipeline Company LLC [9384].  The Debtors' address is 801 Cherry Street, Suite 3700, Unit 19, Fort Worth, Texas 76102.

[2] All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the Motion; and upon the First Day Declaration, the record of the hearing, and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Motion is granted on an interim basis to the extent provided herein.

2.      The Debtors are authorized, but not directed, in a reasonable exercise of their business judgment, subject to the terms of any cash collateral or financing order entered by this Court, to pay or otherwise honor the Employee Obligations and Independent Contractor Compensation that becomes due and owing post-petition on account of the pre-petition period and for which authorization was sought under the Motion; *provided, however*, that, except as otherwise provided in this Interim Order, the aggregate of cash payments provided for in this paragraph shall not exceed $12,475 per individual Employee or Independent Contractor as provided in Bankruptcy Code section 507(a)(4)-(5), *provided further* that aggregate payments on account of Employee Obligations will not exceed $643,000 pursuant to this Interim Order.  For the avoidance of doubt, this authority is inclusive of any pre-petition amounts that may become payable under this Interim Order to third-party service providers that administer, insure, or otherwise facilitate the Employee Obligations.

3.      The Debtors are authorized, but not directed, in a reasonable exercise of their business judgment, subject to the terms of any cash collateral or financing order entered by this Court, to pay all pre-petition and post-petition Withholdings and Payroll Taxes to the appropriate entities in the ordinary course of business.

4.      The Debtors are authorized, but not directed, in a reasonable exercise of their business judgment, subject to the terms of any cash collateral or financing order entered by this Court, to pay all pre-petition and post-petition Payroll Costs, including all administrative and processing costs and payments to outside professionals in the ordinary course of business.

5.      The Debtors are authorized, but not directed, to issue post-petition checks or to effect post-petition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of the chapter 11 cases with respect to pre-petition amounts owed to their Employees.

6.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, provided that sufficient funds are on deposit in the applicable accounts to cover such payments, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Interim Order.

7.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Interim Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim against the Debtors, the creation of an

administrative priority claim on account of the pre-petition obligations sought to be paid, or the assumption or adoption of any contract or agreement under Bankruptcy Code section 365.

8. Nothing in this Interim Order is authorizing or approving any payments or transfers subject to Bankruptcy Code section 503(c). Further, nothing in this Interim Order shall be deemed to violate or permit a violation of Bankruptcy Code section 503(c).

9. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

10. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, this Interim Order shall be immediately effective and enforceable upon its entry.

11. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or are otherwise deemed waived.

12. The Final Hearing on the Motion shall be held on _____, 2015 at ____:____ __.m. (prevailing Eastern Time). Any objections or responses to entry of the proposed Final Order shall be filed on or before seven calendar days before the Final Hearing and served on the following parties: (a) Akin Gump Strauss Hauer & Feld LLP, 1700 Pacific Avenue, Suite 4100, Dallas, TX 75201, Attn: Charles R. Gibbs, Esq. and Sarah Link Schultz, Esq., proposed counsel to the Debtors; (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Paul N. Heath, Esq., proposed Delaware counsel to the Debtors; (c) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017, Attn: Steven M. Fuhrman, Esq., counsel to the First Lien Agent; (d) Latham & Watkins LLP, 885 Third Avenue, Suite 1000, New York, NY 10022, Attn: Mitchell A. Seider, Esq., counsel to the Second Lien Agent; (e) Emmet, Marvin & Martin LLP, 120 Broadway, 32nd

Floor, New York, NY 10271, Attn: Edward P. Zujkowski, counsel to the Second Lien Indenture Trustee; (f) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005, Attn: Dennis F. Dunne, Esq. and Samuel A. Khalil, Esq., counsel to the Ad Hoc Group of Second Lienholders; and (g) the Office of the United States Trustee for Region 3, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Jane Leamy, Esq., no later than ____:____ __.m. (prevailing Eastern Time) on _____, 2015.

13.    In the event that no objections are timely received, the Court may enter the Final Order without need for the Final Hearing.

14.    The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Interim Order.

Wilmington, Delaware

Date: _____, 2015                    _____
                                            United States Bankruptcy Judge

## Exhibit B

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Quicksilver Resources Inc., <u>et al.</u>,[1] | ) | Case No. 15-10585 (   ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**FINAL ORDER AUTHORIZING, BUT NOT DIRECTING, THE
DEBTORS TO (A) PAY PRE-PETITION WAGES, OTHER
COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES
<u>AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS</u>**

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for entry of this Final Order pursuant to Bankruptcy Code sections 105(a), 362, 363, and 507(a)(4)-(5) and Bankruptcy Rules 4001(d), 6003, 6004, 7062, and 9014 (a) authorizing, but not directing, the Debtors to pay pre-petition (i) wages, salaries, and other compensation, (ii) reimbursable employee expenses, and (iii) employee medical and similar benefits; (b) authorizing, but not directing, the Debtors to continue employee benefits programs and any amounts due thereunder; and (c) scheduling a Final Hearing to the extent that a hearing is necessary, all as further described in the Motion; and the Court having entered the *Interim Order Authorizing, but Not Directing, the Debtors To (A) Pay Pre-Petition Wages, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Quicksilver Resources Inc. [6163]; Barnett Shale Operating LLC [0257]; Cowtown Drilling, Inc. [8899]; Cowtown Gas Processing L.P. [1404]; Cowtown Pipeline Funding, Inc. [9774]; Cowtown Pipeline L.P. [9769]; Cowtown Pipeline Management, Inc. [9771]; Makarios Resources International Holdings LLC [1765]; Makarios Resources International Inc. [7612]; QPP Holdings LLC [0057]; QPP Parent LLC [8748]; Quicksilver Production Partners GP LLC [2701]; Quicksilver Production Partners LP [9129]; and Silver Stream Pipeline Company LLC [9384].  The Debtors' address is 801 Cherry Street, Suite 3700, Unit 19, Fort Worth, Texas 76102.

[2] All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

*Programs* [Docket No. _____]; and the Court having jurisdiction to consider this Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and the Court having held the Final Hearing to consider the relief requested in the Motion; and upon the First Day Declaration, the record of the Final Hearing, and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.     The Motion is granted on a final basis to the extent provided herein.

2.     The relief provided in the Interim Order is approved on a final basis.

3.     Subject to the terms of any cash collateral or financing order entered by this Court, aggregate payments on account of pre-petition Employee Obligations will not exceed $1.79 million during these chapter 11 cases.  This authority is inclusive of any pre-petition amounts that may become payable to third-party service providers that administer, insure, or otherwise facilitate the Employee Obligations.  For the avoidance of doubt, aggregate of cash payments provided for in this paragraph shall not exceed $12,475 per individual Employee or Independent Contractor as provided in Bankruptcy Code section 507(a)(4)-(5).

4.      The Debtors are authorized, but not directed, in a reasonable exercise of their business judgment, subject to the terms of any cash collateral or financing order entered by this Court, to pay all pre-petition and post-petition Withholdings and Payroll Taxes to the appropriate entities in the ordinary course of business.

5.      The Debtors are authorized, but not directed, in a reasonable exercise of their business judgment, subject to the terms of any cash collateral or financing order entered by this Court, to pay all pre-petition and post-petition Payroll Costs, including all administrative and processing costs and payments to outside professionals in the ordinary course of business.

6.      The Debtors are authorized, but not directed, in a reasonable exercise of their business judgment, subject to the terms of any cash collateral or financing order entered by this Court, to honor, pay, satisfy, and remit all claims and obligations related to the Director Compensation.

7.      The Debtors are authorized, but not directed, to issue post-petition checks or to effect post-petition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of the chapter 11 cases with respect to pre-petition amounts owed to their Employees.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized and directed to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, provided that sufficient funds are on deposit in the applicable accounts to cover such payments, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Final Order.

9.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Final Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim against the Debtors, the creation of an administrative priority claim on account of the pre-petition obligations sought to be paid, or the assumption or adoption of any contract or agreement under Bankruptcy Code section 365.

10.      Nothing in this Final Order is authorizing or approving any payments or transfers subject to Bankruptcy Code section 503(c).  Further, nothing in this Final Order shall be deemed to violate or permit a violation of Bankruptcy Code section 503(c).

11.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

12.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, this Final Order shall be immediately effective and enforceable upon its entry.

13.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or are otherwise deemed waived.

14.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

15.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Final Order.

16.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Final Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim against the Debtors, the creation of an administrative priority claim on account of the pre-petition obligations sought to be paid, or the assumption or adoption of any contract or agreement under Bankruptcy Code section 365.

17.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, this Final Order shall be immediately effective and enforceable upon its entry.

18.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Final Order.


Wilmington, Delaware

Date: _____, 2015                    _____
                                            United States Bankruptcy Judge