**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Quicksilver Resources Inc., <u>et al.</u>,[1] | ) | Case No. 15-10585 (LSS) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | **Re: Docket No. 16** |

## INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363 AND 507, AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND (III) SCHEDULING A FINAL <u>HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)</u>

Upon the motion, dated March 17, 2015, [D.I. 16] (the "<u>Motion</u>")[2], of Quicksilver Resources Inc. ("<u>Quicksilver</u>") and its affiliated debtors, each as debtor and debtor in possession (collectively, the "<u>Debtors</u>") in the above-captioned cases (the "<u>Cases</u>"), for interim and final orders under sections 105, 361, 362, 363 and 507 of title 11 of the United States Code (as amended, the "<u>Bankruptcy Code</u>"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), seeking:

      (a)      authorization for the Debtors, pursuant to Bankruptcy Code sections 105, 361, 362, 363, and 507, to (a) use the Cash Collateral (as defined in paragraph 4(e) below), and all other Prepetition Collateral (as defined in paragraph 4(d) below); and (b) provide adequate protection to:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Quicksilver Resources Inc. [6163]; Barnett Shale Operating LLC [0257]; Cowtown Drilling, Inc. [8899]; Cowtown Gas Processing L.P. [1404]; Cowtown Pipeline Funding, Inc. [9774]; Cowtown Pipeline L.P. [9769]; Cowtown Pipeline Management, Inc. [9771]; Makarios Resources International Holdings LLC [1765]; Makarios Resources International Inc. [7612]; QPP Holdings LLC [0057]; QPP Parent LLC [8748]; Quicksilver Production Partners GP LLC [2701]; Quicksilver Production Partners LP [9129]; and Silver Stream Pipeline Company LLC [9384]. The Debtors' address is 801 Cherry Street, Suite 3700, Unit 19, Fort Worth, Texas 76102.

[2] All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

*First Lien Lenders*

(1)     the Global Administrative Agent and the U.S. Lenders (each as defined below) under the Amended and Restated Credit Agreement, dated as of December 22, 2011 (as amended, supplemented or otherwise modified, the "U.S. Credit Agreement," and, together with all mortgage, security, pledge and guaranty agreements and all other documentation executed by any Debtor in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "U.S. First Lien Documents" (which U.S. First Lien Documents also secure the Guaranteed Canadian Obligations as defined in paragraph 4(f) below on a first lien *pari passu* basis), and all debts, liabilities and obligations of every kind and nature under the U.S. First Lien Documents, the "U.S. Credit Agreement Obligations,"), among Quicksilver, the lenders from time to time party thereto (including in their (or their affiliates') capacity as a Bank Products Provider, Secured Swap Provider or an Issuing Bank (each as defined in the U.S. Credit Agreement), collectively, the "U.S. Lenders") and JPMorgan Chase Bank, N.A., as Global Administrative Agent (the "Global Administrative Agent");

(2)     the Canadian Administrative Agent and the Canadian Lenders (each as defined below) under the Amended and Restated Credit Agreement, dated as of December 22, 2011 (as amended and supplemented or otherwise modified, the "Canadian Credit Agreement" and, together with all mortgage, security, pledge and guaranty agreements and all other documentation executed by the Canadian Borrower (as defined below) and the Canadian non-Debtor obligors in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "Canadian First Lien Documents," and all debts, liabilities and obligations of every kind and nature under the Canadian First Lien Documents, the "Canadian Credit Agreement Obligations,"), among Quicksilver, Quicksilver Resources Canada Inc. (the "Canadian Borrower"), the lenders from time to time party thereto (including in their (or their affiliates') capacity as a Bank Products Provider, Secured Swap Provider or an Issuing Bank (each as defined in the Canadian Credit Agreement) (collectively, the "Canadian Lenders") and JPMorgan Chase Bank, N.A., Toronto Branch as Administrative Agent (the "Canadian Administrative Agent"; the Canadian Administrative Agent, the Global Administrative Agent, the U.S. Lenders and the Canadian Lenders, the "First Lien Parties");[3]

*Second Lien Lenders and Noteholders*

(3)     the Second Lien Agent and the Second Lien Lenders (each as defined below) under the Second Lien Credit Agreement, dated as of June 21, 2013 (as amended, supplemented or otherwise modified, the "Second Lien Credit Agreement," and, together with all mortgage, security and

---

[3] The Canadian Borrower is not a Debtor in the Cases. As noted above, all of the Prepetition Collateral secures the U.S. Credit Agreement Obligations and the Guaranteed Canadian Obligations on a first lien, pari passu basis.

pledge agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "Second Lien Credit Documents," and all debts, liabilities and obligations of every kind and nature under the Second Lien Credit Documents, the "Second Lien Credit Agreement Obligations"), among Quicksilver, the lenders from time to time party thereto (collectively, the "Second Lien Lenders") and Credit Suisse AG, Cayman Islands Branch (f/k/a Credit Suisse AG), as administrative agent for the Second Lien Lenders and Applicable Authorized Representative (as defined in the Second Lien Pari Passu Intercredtior Agreement (as defined in paragraph 26 below) (the "Second Lien Agent"); and

(4)    the Second Lien Indenture Trustee and the Second Lien Noteholders (each as defined below) under the Indenture, dated as of June 21, 2013 (as amended, supplemented or otherwise modified, the "Second Lien Indenture," and together with all mortgage, security, pledge and guaranty agreements in connection with the Second Lien Credit Agreement and the Second Lien Indenture and all other documentation executed in connection with the foregoing, each as amended, supplemented or otherwise modified, the "Second Lien Indenture Documents"; the Second Lien Indenture Documents collectively with the U.S. First Lien Documents, Canadian Guaranty Agreement, and the Second Lien Credit Documents, the "Prepetition Secured Debt Documents"; and all debts, liabilities and obligations of every kind and nature under the Second Lien Indenture Documents, the "Second Lien Indenture Obligations"; the Second Lien Indenture Obligations collectively with the U.S. Credit Agreement Obligations, and the Second Lien Credit Agreement Obligations, the "Prepetition Obligations"), among Quicksilver as Issuer, certain of its subsidiaries party thereto, and The Bank of New York Mellon Trust Company, N.A. (as trustee and second lien collateral agent for the noteholders from time to time (collectively, the "Second Lien Noteholders"), the Second Lien Agent and the Second Lien Lenders, the "Second Lien Indenture Trustee"; the Second Lien Indenture Trustee, the Second Lien Agent, the Second Lien Lenders and the Second Lien Noteholders, the "Second Lien Parties"); the Second Lien Indenture Trustee, together with the Global Administrative Agent, and the Second Lien Agent, the "Prepetition Agents," and the Prepetition Agents collectively with the U.S. Lenders, the Canadian Lenders, the Canadian Administrative Agent, the Second Lien Lenders and Second Lien Noteholders, the "Prepetition Secured Parties");

(b)    subject to entry of the Final Order (as defined in paragraph (e) below), authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under Bankruptcy Code sections 544, 545, 547, 548, 549 and 550 or any other state or federal law (collectively, the "Avoidance Actions"), as identified pursuant to Rule 4001-2(a)(i)(D) of the Local Rules;

(c)    subject to entry of the Final Order, and except to the extent of the Carve Out (as defined in paragraph 9(c) below), the waiver by the Debtors of any right to surcharge against the Prepetition Collateral or the Adequate Protection

Collateral (as defined in paragraph 9(b) below) pursuant to Bankruptcy Code section 506(c) or any other applicable principle of equity or law, as identified pursuant to Local Rule 4001-2(a)(i)(C);

(d)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Interim Order (a) authorizing the Debtors to use the Cash Collateral and the other Prepetition Collateral; and (b) granting adequate protection to the Prepetition Agents and the Prepetition Secured Parties;

(e)    to schedule, pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2(c), a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing the Debtors on a final basis to continue to use the Cash Collateral and the other Prepetition Collateral and authorizing and approving the relief requested in the Motion to become effective pursuant to the Final Order; and

(f)    waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

The Interim Hearing having been held by this Court on March 19, 2015; and upon the record made by the Debtors at the Interim Hearing (including, without limitation, the First Day Declaration); and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and it appearing that the interim relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *The Motion.*  The Motion is granted on an interim basis as set forth herein.  Any objection to the Motion to the extent not withdrawn or resolved is hereby overruled.

2.    *Jurisdiction.*  This Court has core jurisdiction over the Cases commenced on March 17, 2015 (the "Petition Date"), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. *Notice*. Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on (a) the Office of the United States Trustee for the District of Delaware, Attn: Jane Leamy, Esq.; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Global Administrative Agent, the Canadian Administrative Agent, the Second Lien Agent, and the Second Lien Indenture Trustee; (d) counsel to the Ad Hoc Group of Second Lienholders (as defined below); (e) counsel to the indenture trustees under the Debtors' pre-petition indentures; (f) the United States Securities and Exchange Commission; (g) the United States Internal Revenue Service; and (h) parties entitled to notice pursuant to Local Rule 9013-1(m). Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c) and (d) and the Local Rules.

4. *Debtors' Stipulations*. Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 22 and 23 below) the Debtors admit, stipulate, and agree that:

*The U.S. Credit Agreement*

      (a)    as of the Petition Date, Quicksilver and the Debtor Guarantors (collectively, the "U.S. Debtor Obligors") were indebted and liable to the U.S. Lenders, without defense, counterclaim or offset of any kind, for all of the U.S. Credit Agreement Obligations, including without limitation, Loans (as defined in the U.S. Credit Agreement) made by the U.S. Lenders in the aggregate principal amount of not less than $137,300,000 under the U.S. Credit Agreement and not less than $9,700,000 in face amount of undrawn Letters of Credit (as defined in the U.S. Credit Agreement), plus accrued and unpaid interest, indemnification obligations, obligations arising under Swap Agreements (as defined in the U.S. Credit Agreement), Bank Products Obligations (as defined in the U.S. Credit Agreement), and fees and expenses (including, without limitation, the reasonable fees and expenses of the Global Administrative Agent's attorneys, consultants, accountants, experts and financial advisors) and other obligations incurred in connection therewith, in each case in accordance with the terms of the U.S. First Lien Documents; the U.S. Credit Agreement Obligations are unconditionally and irrevocably guaranteed by the Debtor Guarantors pursuant to the Guaranty Agreement, dated as of September 6, 2011 (as amended,

supplemented or otherwise modified, the "<u>Guaranty Agreement</u>"), among Quicksilver, the other Debtors party thereto and the Global Administrative Agent;

(b)     the U.S. Credit Agreement Obligations constitute the legal, valid and binding obligation of the U.S. Debtor Obligors, enforceable in accordance with their terms (except as subject to the stay of enforcement arising under Bankruptcy Code section 362);

(c)     (i) no portion of the U.S. Credit Agreement Obligations and no amounts paid at any time to the Global Administrative Agent or the U.S. Lenders in respect of the U.S. Credit Agreement Obligations, the U.S. First Lien Documents, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery or subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (ii) the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the U.S. Credit Agreement Obligations or the U.S. First Lien Documents, whether arising on or prior to the date hereof, under the Bankruptcy Code or applicable nonbankruptcy law against the Global Administrative Agent, the U.S. Lenders, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors;

(d)     the liens and security interests granted by the Debtor Guarantors and certain non-Debtor entities[4] to the Global Administrative Agent to secure the U.S. Credit Agreement Obligations and the Guaranteed Canadian Obligations (as defined in paragraph 4(f), below) for the benefit of the Global Administrative Agent, the U.S. Lenders, the Canadian Administrative Agent and the Canadian Lenders pursuant to and in connection with U.S. First Lien Documents, including without limitation, the Amended and Restated Pledge Agreement, dated as of December 22, 2011 (as amended, supplemented or otherwise modified, the "<u>Pledge Agreement</u>"), and the Mortgage, Deed of Trust, Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing Statement, dated as of September 6, 2011 (together with all recorded mortgage filings, as amended, supplemented or otherwise modified, the "<u>Mortgage</u>"), and the other U.S. First Lien Documents are valid, binding, perfected, enforceable, first priority liens and security interests on the real and personal property of the U.S. Debtor Obligors constituting "Collateral" as defined in the Pledge Agreement and the Mortgage, respectively, including without limitation, oil and gas properties (and as-extracted collateral, goods, fixtures, hydrocarbons, books and records, documents, instruments, general intangibles and letter-of-credit rights deriving from or pertaining to the Mortgaged Property (as defined in the Mortgage), certain equity interests, accounts, contract rights and general intangibles consisting of the U.S. Debtor Obligors' rights under Swap Agreements (all such "Collateral," including the Cash Collateral (as defined below) and the setoff rights described in the U.S. First Lien Documents or arising by operation of law, are collectively referred to

---

[4] 65% of the equity interests of the Canadian Borrower and Quicksilver Production Partners Operating Ltd. are pledged under the Pledge Agreement to secure the U.S. Credit Agreement Obligations and the Canadian Credit Agreement Obligations.

herein as the "Prepetition Collateral"), are subject in each case to permitted exceptions under the U.S. First Lien Documents, and are not subject to objection, defense, contest, avoidance, recharacterization, reclassification, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law by any person or entity; and

(e)     all of the Debtors' cash (1) constituting Prepetition Collateral; (2) constituting proceeds, products, rents, or profits of property of Prepetition Collateral; or (3) subject to the U.S. Lenders' rights of setoff (provided that with respect to the U.S. Operating Account (defined below) only cash subject to such rights of setoff that existed as of the Petition Date) constitutes cash collateral (the "Cash Collateral"), and all of the Debtors' cash not constituting Prepetition Collateral, proceeds, products, rents or profits of property of Prepetition Collateral or subject to such rights of setoff is not Cash Collateral.

## *The Canadian Credit Agreement*

(f)     as of the Petition Date, (i) the U.S. Debtor Obligors were indebted and liable to the Canadian Lenders, without defense, counterclaim or offset of any kind, under the Guaranty Agreement, dated as of December 22, 2011 (as amended, supplemented or otherwise modified, the "Canadian Guaranty Agreement"), among the U.S. Debtor Obligors party thereto from time to time and the Canadian Administrative Agent pursuant to which the U.S. Debtor Obligors unconditionally and irrevocably guaranteed the Canadian Credit Agreement Obligations (the "Guaranteed Canadian Obligations"), and (ii) the Canadian Borrower and the non-Debtor Canadian obligors party to or otherwise obligated under the Canadian First Lien Documents were indebted and liable to the Canadian Lenders, without defense, counterclaim or offset of any kind, for all of the Canadian Credit Agreement Obligations, including without limitation, Loans (as defined in the Canadian Credit Agreement) made by the Canadian Lenders in the aggregate principal amount of not less than $97,500,000 and not less than $28,500,000 in face amount of undrawn Letters of Credit (as defined in the Canadian Credit Agreement), plus accrued and unpaid interest, indemnification obligations, obligations arising under Swap Agreements (as defined in the Canadian Credit Agreement), Bank Products Obligations (as defined in the Canadian Credit Agreement) and fees and expenses (including, without limitation, the reasonable fees and expenses of the Canadian Administrative Agent's attorneys, consultants, accountants, experts and financial advisors) and other obligations incurred in connection therewith, in each case in accordance with the terms of the Canadian First Lien Documents;

(g)     the Guaranteed Canadian Obligations constitute the legal, valid and binding obligation of the U.S. Debtor Obligors, enforceable in accordance with their terms (except as subject to the stay of enforcement arising under Bankruptcy Code section 362), and the Canadian Credit Agreement Obligations constitute the legal, valid and binding obligation of the Canadian Borrower and the Canadian non-Debtor obligors, enforceable in accordance with their terms;

(h)     (i) no portion of the Guaranteed Canadian Obligations or the Canadian Credit Agreement Obligations and no amounts paid at any time to the Canadian Administrative Agent or the Canadian Lenders in respect of the Guaranteed Canadian Obligations or the Canadian Credit Agreement Obligations, the

Canadian Guaranty Agreement, the Canadian First Lien Documents, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery or subordination or other challenge pursuant to the Bankruptcy Code, other applicable insolvency law or applicable nonbankruptcy law, and (ii) the Debtors, the Canadian Borrower and the non-Debtor Canadian obligors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Guaranteed Canadian Obligations, the Canadian Credit Agreement Obligations, the Canadian Guaranty or the Canadian First Lien Documents, whether arising on or prior to the date hereof, under the Bankruptcy Code, other applicable insolvency law or applicable non-insolvency law, against the Canadian Administrative Agent, the Canadian Lenders, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors;

(i)     the liens and security interests granted to the Global Administrative Agent for the benefit of Canadian Lenders pursuant to and in connection with the Canadian First Lien Documents are valid, binding, perfected, enforceable, first priority liens and security interests on  the collateral described therein (the "Canadian Collateral"), subject to permitted exceptions under the Canadian First Lien Documents, and are not subject to objection, defense, contest, avoidance, recharacterization, reclassification, reduction or subordination pursuant to the Companies' Creditors Arrangement Act (the "CCAA"), other applicable insolvency law or applicable non-insolvency law by any person or entity;

(j)     the aggregate value of the Prepetition Collateral substantially exceeds the aggregate amount of the U.S. Credit Agreement Obligations, including the Guaranteed Canadian Obligations;

(k)     in connection with the commencement of the Cases, and notwithstanding the resulting automatic acceleration of the Canadian Credit Agreement Obligations, at the request of the U.S. Debtor Obligors and the Canadian Borrower, and as an essential component of the consensually negotiated terms of the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order, the Global Administrative Agent, the Canadian Administrative Agent, the U.S. Lenders and the Canadian Lenders have implemented a forbearance from the exercise of rights and remedies against the Canadian Borrower pursuant to the terms of that certain *Waiver and Forbearance Agreement*, dated as of March 16, 2015 to facilitate the current intention of the U.S. Debtor Obligors and the Canadian Borrower to not have the Canadian Borrower commence proceedings under the CCAA at this time to avoid the potential disruption of the Canadian Borrower's business operations that may result from the commencement of proceedings under the CCAA.

*The Second Lien Credit Agreement*

(l)     as of the Petition Date, the U.S. Debtor Obligors were indebted and liable to the Second Lien Lenders, without defense, counterclaim or offset of any kind, for all of the Second Lien Credit Agreement Obligations, including without limitation, the Loans (as defined in the Second Lien Credit Agreement) made by the Second Lien Lenders in the aggregate principal amount of not less than $625,000,000 under the Second Lien Credit Agreement, plus accrued and

unpaid interest, premiums, indemnification obligations and fees and expenses (including, without limitation, the reasonable fees and expenses of the Second Lien Agent's and the Second Lien Lenders' attorneys, consultants, accountants, experts and financial advisors) and other obligations incurred in connection therewith, in each case in accordance with the terms of the Second Lien Credit Documents; the Second Lien Credit Agreement Obligations are unconditionally and irrevocably guaranteed by the Debtor Guarantors pursuant to the Guaranty Agreement, dated as of June 13, 2013 (as amended, supplemented or otherwise modified, the "Second Lien Guaranty Agreement"), among Quicksilver, the other Debtors party thereto from time to time and the Second Lien Agent;

(m)     the Second Lien Credit Agreement Obligations under the Second Lien Credit Documents constitute the legal, valid and binding obligation of the U.S. Debtor Obligors, enforceable in accordance with their terms (except as subject to the stay of enforcement arising under Bankruptcy Code section 362); and

(n)     (i) no portion of the Second Lien Credit Agreement Obligations and no amounts paid at any time to the Second Lien Agent or the Second Lien Lenders in respect of the Second Lien Credit Agreement Obligations, the Second Lien Credit Documents, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery or subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Second Lien Credit Agreement Obligations or the Second Lien Credit Documents, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Second Lien Agent, the Second Lien Lenders, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors.

*The Second Lien Indenture*

(o)     as of the Petition Date, U.S. Debtor Obligors were indebted and liable to the Second Lien Noteholders, without defense, counterclaim or offset of any kind, for all of the Second Lien Indenture Obligations (the Second Lien Indenture Obligations together with the Second Lien Credit Agreement Obligations, the "Second Lien Obligations"), including without limitation, the notes issued to the Second Lien Noteholders in the aggregate principal amount of not less than $200,000,000 under the Second Lien Indenture, plus accrued and unpaid interest, indemnification obligations and fees and expenses (including, without limitation, the reasonable fees and expenses of the Second Lien Indenture Trustee's attorneys, consultants, accountants, experts and financial advisors) and other obligations incurred in connection therewith, in each case in accordance with the terms of the Second Lien Indenture Documents; the Second Lien Indenture Obligations and other obligations are unconditionally and irrevocably guaranteed by the Debtor Guarantors pursuant to the Second Lien Indenture;

(p)     the Second Lien Indenture Obligations constitute the legal, valid and binding obligation of the U.S. Debtor Obligors, enforceable in accordance with their terms (except as subject to the stay of enforcement arising under Bankruptcy Code section 362);

9

(q)     (i) no portion of the Second Lien Indenture Obligations and no amounts paid at any time to the Second Lien Indenture Trustee or the Second Lien Noteholders in respect of the Second Lien Indenture Obligations, the Second Lien Indenture Documents, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery or subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Second Lien Indenture Obligations or the Second Lien Indenture Documents, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Second Lien Indenture Trustee, the Second Lien Noteholders, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors; and

(r)     the liens and security interests granted to the Second Lien Indenture Trustee to secure the Second Lien Obligations  pursuant to and in connection with Second Lien Guaranty Agreement, dated as of June 21, 2013, the Pledge Agreement, dated as of June 21, 2013, and the Mortgage, Deed of Trust, Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing Statement, dated as of June 21, 2013 (together with all recorded mortgage filings, as amended, supplemented or otherwise modified, the "Second Lien Mortgages") and any other Security Instruments (as defined in the Second Lien Credit Agreement) (collectively, the "Second Lien Collateral Documents") are valid, binding, perfected, enforceable, second priority liens and security interests on the Prepetition Collateral (other than Prepetition Collateral constituting setoff rights of the Global Administrative Agent and the U.S. Lenders), subject in each case to the Intercreditor Agreement (as defined in paragraph 7 below) and permitted exceptions under the U.S. First Lien Documents and the Second Lien Credit Documents and are not subject to objection, defense, contest, avoidance, recharacterization, reclassification, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law by any person or entity.[5]

5.     *Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)     Good cause has been shown for the entry of this Interim Order.

(b)     The Debtors have an immediate need to use the Prepetition Collateral, to, among other things, fund the orderly continuation of their businesses, pay their operating expenses and preserve the going concern value of the Debtors.

(c)     The terms of the use of the Prepetition Collateral pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d)     The terms of the use of the Prepetition Collateral pursuant to this Interim Order have been the subject of extensive negotiations conducted in good faith and at

---

[5] The Second Lien Credit Agreement Obligations and the Second Lien Indenture Obligations are secured on a pari passu basis.

arm's length among the Debtors, the Global Administrative Agent and the other Prepetition Secured Parties and, pursuant to Bankruptcy Code sections 105, 361 and 363, the Prepetition Agents and the Prepetition Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order, and each is entitled to the protection provided under Bankruptcy Code section 363(m).

(e)     The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d).  Absent granting the interim relief sought by this Interim Order, the Debtors' estates could be immediately and irreparably harmed.  The use of the Prepetition Collateral in accordance with this Interim Order is in the best interest of the Debtors' estates.

6.     *Authorization of Use of Cash Collateral and Prepetition Collateral.*

(a)     The Debtors are hereby authorized to use the Prepetition Collateral during the period from the Petition Date through and including the Termination Date for (i) working capital, general corporate purposes and administrative costs and expenses of the Debtors incurred in the Cases, subject to the terms hereof; and (ii) adequate protection payments to the Prepetition Agents and the Prepetition Secured Parties, as provided herein.  All post-petition distributions and transfers by a Debtor to any other Debtor (each, a "Debtor Transferee") shall constitute an allowed administrative expense under Bankruptcy Code sections 503(b)(1) and 507(a)(2) against such Debtor Transferee in the aggregate amount of such distribution or transfer, which administrative expense claim against such Debtor Transferee shall be junior in all respects to the 507(b) Claims (as defined in paragraph 9(d)) against such Debtor Transferee.

(b)     During the period from April 1, 2015 through the Termination Date (as defined in paragraph 11, below), the Debtors are hereby authorized and directed to deposit into the Debtors' main operating account (held by the Global Administrative Agent) (as further described and defined in the *Debtors' Motion for (A) Authority to (I) Continue Using Existing Cash Management System, (II) Honor Certain Pre-petition Obligations Related to the Use of the Cash Management System, and (III) Maintain Existing Bank Accounts and Business Forms; and (B) an Extension of Time to Comply with Bankruptcy Code Section 345(b)* (the "Cash Management Motion") filed on the Petition Date, the "U.S. Operating Account") on the 1st business day of each month, cash that does not constitute Cash Collateral in an amount equal to no less than $15 million.  All amounts in the U.S. Operating Account constitute either Cash Collateral or cash so deposited by or for the benefit of the Debtors; provided, however, that, as described more fully in the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors To Pay or Honor Pre-Petition and Post-Petition Royalty Obligations, Working Interest Obligations and Other Obligations Related to Oil and Gas Leases* filed on the Petition Date, certain funds received by the Debtors are not assets of the Debtors, but rather are assets of third-parties (the "Third Party Funds"), which flow through the Debtors' accounts (including the U.S. Operating Account) and accordingly, the Third Party Funds are not property of the Debtors' estates and do not constitute Cash Collateral or cash of the Debtors.  The Debtors' cash requirements are such that the Debtors need to use both the Cash Collateral and the cash deposited by or for the benefit of the Debtors into the U.S. Operating Account pursuant to this paragraph 6(b) for

11

working capital, general corporate purposes and administrative costs and expenses of the Debtors incurred in the Cases. The Court shall retain jurisdiction to resolve any dispute with respect to (1) the extent to which cash deposited into the U.S. Operating Account by or for the benefit of the Debtors or any other cash or cash equivalents of the Debtors constitutes Cash Collateral (and all rights of the Prepetition Secured Parties with respect to any such dispute are expressly preserved) and (2) any allocation of the Debtors' cash requirements as between the use of Cash Collateral and such cash deposited by or for the benefit of the Debtors into the U.S. Operating Account; provided that all costs, fees and expenses paid by the Debtors that relate to assets that are not Prepetition Collateral or are general expenses of the Debtors' estates shall be deemed, to the extent such cash is available, to have been paid from cash that is not Cash Collateral. The Debtors shall fully comply with the accounting of Cash Collateral required by Bankruptcy Code section 363(c)(4) and shall also account for cash that is deposited by or for the benefit of the Debtors into the U.S. Operating Account.

7.    *Consent by the Global Administrative Agent.*    The Global Administrative Agent consents to the Debtors' use of Cash Collateral, in accordance with and subject to the terms and conditions contained in this Interim Order or, as applicable, the Final Order. By virtue of the Global Administrative Agent's consent to the Debtors' use of Cash Collateral and the provision of adequate protection for the use of the Cash Collateral, pursuant to and subject to the terms of the Second Lien Intercreditor Agreement, dated as of June 21, 2013 among Quicksilver, the Global Administrative Agent as representative for the U.S. Lenders and the Canadian Lenders, the Second Lien Agent, as representative for the Second Lien Lenders and Second Lien Noteholders and the Second Lien Indenture Trustee (as amended, supplemented or otherwise modified, the "Intercreditor Agreement"), the Second Lien Parties are deemed to have consented to such use of Cash Collateral. *to the extent set forth in the Intercreditor Agreement*

8.    *Entitlement to Adequate Protection.*    The Prepetition Agents and the Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361, 363(c)(2) and 363(e), to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate post-petition diminution in value of the applicable Prepetition Agent's or Prepetition Secured Party's interest in the Prepetition Collateral, including without limitation, any

such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code section 362 (such diminution in value, the "Adequate Protection Obligations"[6]).

        9.    *Adequate Protection Claims and Liens.*

        *Adequate Protection for the First Lien Parties.*

As adequate protection, the First Lien Parties are hereby granted the following claims, liens, rights and benefits:

    (a)    Section 507(b) Claim.  The Adequate Protection Obligations due to the First Lien Parties (the "First Lien Adequate Protection Obligations") shall constitute joint and several superpriority claims against the Debtors as provided in Bankruptcy Code section 507(b), with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "First Lien 507(b) Claim"), subject and subordinate only to the Carve Out (as defined in paragraph 9(c) below).

    (b)    Adequate Protection Liens.  As security for the First Lien Adequate Protection Obligations, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Global Administrative Agent of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the Global Administrative Agent for the benefit of the First Lien Parties (all property identified in clauses (1), (2), (3) and (4) below being collectively referred to as the "Adequate Protection Collateral"), subject only to the Carve Out (as defined in paragraph (c) below) (all such liens and security interests, the "First Lien Adequate Protection Liens"):

        (1)    First Priority on Unencumbered Property.  Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority replacement lien on, and security interest in, all of the Debtors' rights in tangible and intangible

---

[6]    "Adequate Protection Obligations" in this Interim Order shall only refer to diminution in value arising before entry of the Final Order.  Any diminution in value arising after the entry of the Final Order shall be subject to the terms of the Final Order.

assets, including without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to (x) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by Bankruptcy Code section 546(b) (collectively, the "<u>Unencumbered Property</u>"), including without limitation, oil and gas properties (and as-extracted collateral, goods, fixtures and hydrocarbons relating thereto), accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (including those arising under Bankruptcy Code section 549), and the proceeds of all of the foregoing, <u>provided</u> that the Unencumbered Property shall not include the Avoidance Actions, but upon the entry of the Final Order, the Unencumbered Property shall include, and the Adequate Protection Liens (as defined below) shall attach to, any proceeds or property recovered in respect of any Avoidance Action;

(2) <u>Liens Junior to Certain Existing Liens</u>.  Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, all tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired (other than the property described in clause (1) or (3) of this paragraph 9(b)), that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by Bankruptcy Code section 546(b), which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Global Administrative Agent;

(3) <u>Liens Senior to Certain Existing Liens</u>.  Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, all tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired; <u>provided</u> that such liens and security interests shall not prime (x) any valid, perfected and unavoidable liens and security interests in existence as of the Petition Date that are held by or granted to any person other than the Global Administrative Agent or the Second Lien Indenture Trustee or (y) valid and unavoidable liens and security interests in existence as of the Petition Date that are perfected after the Petition Date as permitted by Bankruptcy Code section 546(b) and that are held by or granted to any person other than the Global Administrative Agent or the Second Lien Indenture Trustee;

(4) <u>Status of The Adequate Protection Claims</u>. The Adequate Protection Liens (as defined below) shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551 or (B) any lien or security interest arising after the Petition Date, subject to the Carve Out, or (ii) except as otherwise set forth in clauses (1), (2) and (3) of this paragraph 9(b), subordinated to or made *pari passu* with any other lien or security interest under Bankruptcy Code sections 363 or 364 or otherwise;

(c) For purposes hereof, the "<u>Carve Out</u>" shall mean the following: (i) all statutory fees required to be paid by the Debtors to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code (irrespective of whether the Carve Out Notice (as defined below in this paragraph) has been delivered); (ii) the reasonable fees and expenses up to $50,000 incurred by a trustee appointed in the Debtors' cases under Bankruptcy Code section 726(b) (irrespective of whether the Carve Out Notice has been delivered); (iii) all accrued and unpaid reasonable fees, disbursements, costs, and expenses (the "<u>Professional Fees</u>") incurred by professionals or professional firms retained by the Debtors or their estates pursuant to Bankruptcy Code sections 327, 328, or 363 and any statutory committee (the "<u>Committee</u>") appointed in the Debtors' Cases pursuant to Bankruptcy Code section 1103 (collectively, the "<u>Professionals</u>"), which Professional Fees (x) are allowed by this Court at any time and (y) were incurred (regardless of when invoiced or applied for) at any time before or on the first business day following delivery by the Global Administrative Agent or the Second Lien Indenture Trustee to counsel to the Debtors identified in paragraph 30, the U.S. Trustee, and counsel to any Committee of a written notice (the "<u>Carve Out Notice</u>"), which notice may be delivered at any time following the occurrence of the Termination Date or a Termination Event (as defined in paragraph 11 below), stating that the Termination Date has occurred or a Termination Event has occurred; and (iv) the Professional Fees allowed by this Court in an aggregate amount not exceeding $4 million, which Professional Fees are incurred by the Professionals after the first business day following delivery by the Global Administrative Agent of the Carve Out Notice in accordance with the immediately preceding clause (iii); <u>provided</u> that: (x) the Carve Out shall not be available to pay any Professional Fees incurred by any party, including the Debtors or any Committee or any Professionals engaged thereby, in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the Prepetition Agents or Prepetition Secured Parties, it being understood that up to an aggregate of $100,000 shall be made available to any Committee for investigation costs, as described in paragraph 23 below; (y) so long as a Carve Out Notice has not been delivered, the Carve Out shall not be reduced by the payment of Professional Fees allowed at any time by this Court and payable under Bankruptcy Code sections 328, 330 and 331; and (z) without prejudice to the rights of the Professionals or the Debtors to contest any such objection, nothing in this Interim Order shall be construed to impair the ability of any party to object to any fees, expenses, reimbursements, or compensation sought by any such Professionals. For the avoidance of doubt, nothing in this Order shall or shall be construed to limit the payment following the delivery of a Carve Out Notice of any of the statutory, Professional Fees or other fees covered by this Carve Out, from cash that is not Cash Collateral.

15

Notwithstanding anything to the contrary herein, payment following the delivery of a Carve Out Notice of any of the statutory, Professional Fees or other fees covered by this Carve Out shall be paid (and shall be deemed to have been satisfied) first, from unencumbered assets or cash that is not Cash Collateral and second, if there are no remaining unencumbered assets or cash that is not Cash Collateral, from Cash Collateral.

*Adequate Protection for the Second Lien Parties.*

As adequate protection, the Second Lien Parties are hereby granted the following claims, liens, rights and benefits:

(d)     Section 507(b) Claim.  The Adequate Protection Obligations due to the Second Lien Parties (the "Second Lien Adequate Protection Obligations") shall constitute joint and several superpriority claims against the Debtors as provided in Bankruptcy Code section 507(b) as described in paragraph 9(a), junior to the First Lien 507(b) Claim (the "Second Lien 507(b) Claim", collectively with the First Lien 507(b) Claim, the "507(b) Claims"), subject and subordinate only to the Carve Out and the First Lien 507(b) Claim.

(e)     Adequate Protection Liens.  As security for the Second Lien Adequate Protection Obligations, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Second Lien Indenture Trustee of any Collateral, security interests and liens are hereby granted to the Second Lien Indenture Trustee for the benefit of the Second Lien Parties on the Adequate Protection Collateral, subject and subordinate only to the (i) Carve Out, (ii) the First Lien Adequate Protection Liens and (iii) the liens and security interests securing the U.S. Credit Agreement Obligations and the Canadian Credit Agreement Obligations, and subject further to the Intercreditor Agreement and the Second Lien Pari Passu Intercreditor Agreement (all such liens and security interests, the "Second Lien Adequate Protection Liens," and collectively with the First Lien Adequate Protection Liens, the "Adequate Protection Liens").

10.     *Additional Adequate Protection.*

*Additional Adequate Protection to the First Lien Parties.*

As additional adequate protection to the First Lien Parties:

(a)     Payments:  The Debtors are authorized and directed to pay to the Global Administrative Agent for the ratable benefit of the U.S. Lenders on the last business day of each calendar month after the entry of this Interim Order, all accrued and unpaid pre or post-petition interest, fees and costs due and payable under the U.S. Credit Agreement (including, without limitation, interest on Loans, breakage costs and accrued fees owing to the Global Administrative Agent), in each case, such payments calculated based on the Alternate Base Rate plus the Applicable Margin for ABR Loans (as set forth in the U.S. Credit

Agreement or the other applicable documents) (with all payments of interest to be without prejudice the rights of the Global Administrative Agent and U.S. Lenders to assert a claim for payment of additional interest at any other rates in accordance with the U.S. Credit Agreement).

(b)     Fees and Expenses:    The Debtors are authorized and directed to pay, in accordance with this paragraph, on the first Thursday following fifteen (15) days after delivery of an invoice describing in customary detail (redacted for privilege and work product) the reasonable and documented fees, costs and expenses incurred or accrued by the Global Administrative Agent, including without limitation, the reasonable fees and documented expenses of legal counsel (including local counsel), financial advisors and other professionals hired by or on behalf of the Global Administrative Agent. None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; provided, however, that the Debtors shall submit copies of the Global Administrative Agent's legal counsels' and financial advisor's invoices to the U.S. Trustee and the Committee, and the Debtors, the U.S. Trustee and the Committee shall have ten (10) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoice. If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in the Cases, provided that the Debtors shall pay any undisputed portion of such fees, costs and expenses on the first Thursday following fifteen (15) days after the initial presentment to the Debtors of such invoice. On the first Thursday following two (2) business days of the entry of this Interim Order, the Debtors shall pay any accrued but unpaid fees of legal counsel (including local counsel), financial advisors and other professionals hired by or on behalf of the Global Administrative Agent through the date of the entry of this Interim Order (whether incurred before or after the Petition Date).

(c)     Other Covenants:    The Debtors shall maintain their cash management arrangements in a manner consistent with that described in the applicable "first-day" order. The Debtors shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the Global Administrative Agent at least five (5) business days prior to the date on which the Debtors seek the authority of this Court for such use, sale or lease. The Debtors shall comply with the covenants contained in sections 8.05 and 8.06 of the U.S. Credit Agreement and the Second Lien Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Adequate Protection Collateral.

(d)     Reporting: The Debtors shall comply with the reporting requirements set forth in Section 8.01 (a), (b), (d), (e), (f) and (g) of the U.S. Credit Agreement and Second Lien Credit Agreement and shall provide the following additional reporting to the Prepetition Agents and, subject to appropriate confidentiality provisions, the Committee:

17

(1)     A rolling 13-week cash forecast for Quicksilver and the Canadian Borrower provided in MS-Excel, including a budget to actual reconciliation, to be provided weekly on Thursday of each week;

(2)     Detailed review of key underlying assumptions supporting the 6-month cash forecasts for Quicksilver and the Canadian Borrower provided to the financial advisors to the Global Administrative Agent and the Second Lien Agent before the Petition Date, to be provided within twenty (20) days after the Petition Date;

(3)     A monthly report of capital expenditures (beginning with the year-to-date period ended February 28, 2015) for Quicksilver and the Canadian Borrower to be provided as soon as available, but in any event within one (1) month and ten (10) business days after the last day of each month;

(4)     A list of all Swap Agreements of Quicksilver and the Canadian Borrower in place as of the first business day of the month, which list contains the material terms thereof (including type, remaining term, counterparty, mark-to-market value as of the first business day of the month), and information on any such Swap Agreements terminated or unwound during the prior month, to be provided by the 10th business day of the following month;

(5)     Detailed accounts payable aging for Quicksilver and the Canadian Borrower as of month end to be provided within fifteen (15) business days after the last day of each month; and

(6)     Detailed accounts receivable aging for Quicksilver and the Canadian Borrower as of month end to be provided within fifteen (15) business days after the last day of each month.

(e)     Access to Records: In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under their respective Prepetition Secured Debt Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents and employees of the Prepetition Agents and the Second Lien Indenture Trustee (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

*Additional Adequate Protection to the Second Lien Parties.*

As additional adequate protection to the Second Lien Parties:

(f)     Payments: The Debtors are authorized and directed to pay to the Second Lien Agent for the ratable benefit of the Second Lien Lenders and to the Second Lien Indenture Trustee for the ratable benefit of the Second Lien Noteholders, as applicable, on the last business day of each calendar month after the entry of this Interim Order, all accrued and unpaid pre or post-petition interest, fees and costs due and payable under the Second Lien Credit Agreement or the Second Lien Indenture (including, without limitation, interest on Loans, breakage costs and

accrued fees owing to the Second Lien Agent or the Second Lien Indenture Trustee), in each case, such payments calculated based on the following applicable non-default rate as set forth in (i) the Second Lien Credit Agreement, the Adjusted LIBO Rate for the Interest Period (deemed to be one month's duration) in effect for such Borrowing plus the Applicable Margin and (ii) the Second Lien Indenture, Three-month LIBO Rate plus 5.75% (with all payments of interest to be without prejudice the rights of the Second Lien Agent and the Second Lien Indenture Trustee to assert a claim for payment of additional interest at any other rates in accordance with the Second Lien Credit Agreement and the Second Lien Indenture); provided that the first payment payable to each of the Second Lien Agent and the Second Lien Indenture Trustee pursuant to this paragraph shall be payable on the second business day after the date of entry of the Final Order; and provided further that the Court shall retain the ability to fashion any appropriate remedy with respect to such payments.

(g)    Fees and Expenses:  The Debtors are authorized and directed to pay, in accordance with this paragraph, on the first Thursday following fifteen (15) days after delivery of an invoice describing in customary detail (redacted for privilege and work product) the reasonable and documented fees, costs and expenses incurred or accrued by the (i) Second Lien Agent, (ii) the *ad hoc* group of Second Lien Lenders and Second Lien Noteholders (the "Ad Hoc Group of Second Lienholders") and (iii) the Second Lien Indenture Trustee, including without limitation, the reasonable fees and documented expenses of legal counsel (including local counsels), financial advisors and other professionals hired by or on behalf of the Second Lien Agent, Ad Hoc Group of Second Lienholders and the Second Lien Indenture Trustee, in each case whether incurred before or after the Petition Date.  None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; provided, however, that the Debtors shall submit copies of the Second Lien Agent's, Ad Hoc Group of Second Lienholders' and the Second Lien Indenture Trustee's respective legal counsels' and financial advisor's invoices to the U.S. Trustee and the Committee and the Debtors, the U.S. Trustee and the Committee shall have ten (10) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoice.  If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in the Cases, provided that the Debtors shall pay any undisputed portion of such fees, costs and expenses on the first Thursday following fifteen (15) days after the initial presentment to the Debtors of such invoice.

11.    *Termination.*  The Debtors' right to use the Cash Collateral pursuant to this Interim Order shall terminate (the date of any such termination, the "Termination Date") without further notice or court proceeding on the earliest to occur of (i) the date that is forty-five (45) days after the Petition Date (unless such period is extended by mutual agreement of the Global Administrative Agent and the

19

[handwritten annotation: set forth in paragraph 10(f)1(g)]

[handwritten annotation: To the extent the interest and/or fees are not approved at the Final Hearing, the Court can fashion any appropriate relief with respect to the accrual of such interests and/or fees during the period from the date of the entry of this Interim order through the date of entry of the Final Order, including the payment or the non-payment thereof.]

Debtors) if the Final Order has not been entered by this Court on or before such date, (ii) the date that

is nine (9) months after the Petition Date and (iii) the occurrence of any of the events set forth in

clauses (a) through (j) below (unless waived by the Global Administrative Agent and/or the Second

Lien Indenture Trustee or the Second Lien Agent, as applicable) (the events set forth in clauses (a)

through (j) below are collectively referred to herein as the "Termination Events"):

(a)  Failure of the Debtors to make any payment under this Interim Order to the Prepetition Agents or Prepetition Secured Parties within three (3) business days after such payment becomes due (other than payments required pursuant to clauses (i) and (iii) of paragraph 10(a) of this Interim Order, which payments shall be made as required therein);

(b)  Other than with respect to clauses (a), (d), and (f) of this paragraph 11, failure of the Debtors to: (i) comply with any material provision of this Interim Order; or (ii) comply with any other covenant or agreement specified in this Interim Order (other than those described in clause (i) above) in any material respect and such failure to comply with any such other covenant or agreement shall continue unremedied for five (5) business days following notice by the Global Administrative Agent, the Second Lien Agent or the Second Lien Indenture Trustee of such failure;

(c)  The Debtors shall create, incur or suffer to exist any post-petition liens or security interests other than: (i) those granted pursuant to this Interim Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the U.S. Credit Agreement or any other U.S. First Lien Document;

(d)  An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the consent of the Global Administrative Agent, the Second Lien Agent and the Second Lien Indenture Trustee;

(e)  The Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the First Lien 507(b) Claim or the Second Lien 507(b) Claim;

(f)  The Court shall have entered an order dismissing any of the Cases;

(g)  The Court shall have entered an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code;

(h)     The Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in the Cases, unless consented to in writing by the Global Administrative Agent; provided, however, that nothing herein shall preclude any party from seeking to appoint an examiner;;

(i)     A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the U.S. Credit Agreement Obligations or the Guaranteed Canadian Obligations or asserting any other cause of action against and/or with respect to the U.S. Credit Agreement Obligations, the Guaranteed Canadian Obligations, the Prepetition Collateral securing the US Credit Agreement Obligations or the Canadian Credit Agreement Obligations or any of the First Lien Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party); or

(j)     Subject to the terms of the Intercreditor Agreement, a filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Second Lien Credit Agreement Obligations or the Second Lien Indenture Obligations or asserting any other cause of action against and/or with respect to the Second Lien Credit Agreement Obligations, the Second Lien Indenture Obligations, the Prepetition Collateral or any of the Second Lien Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party).

12.     *Remedies upon the Termination Date.*   The Debtors shall promptly provide notice to each of the Prepetition Agents (with a copy to counsel for the Committee and the U.S. Trustee) of the occurrence of any Termination Event.  Upon the occurrence of the Termination Date, (a) the First Lien Adequate Protection Obligations, if any, shall become due and payable and (b) the Global Administrative Agent, each U.S. Lender, and, subject to the Prepetition Intercreditor Agreements, the Second Lien Agent and Second Lien Indenture Trustee, upon five (5) business days written notice to the counsel to the Debtors identified in paragraph 31, the U.S. Trustee, and counsel to the Committee, may (i) setoff amounts in any account of the Debtors maintained with the Global Administrative Agent or such U.S. Lender, respectively, to the extent necessary for payment of the First Lien Adequate Protection Obligations and (ii) exercise the rights and remedies available under the U.S. First Lien Documents, the Second Lien Credit Documents, the Second Lien Indenture Documents, this Interim

Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations. The automatic stay under Bankruptcy Code section 362 is hereby deemed modified and vacated to the extent necessary to permit such actions. In any hearing regarding any exercise of rights or remedies, the only issues that may be raised by any of the Debtors in opposition thereto shall be (x) whether, in fact, the Termination Date shall have occurred and (y) what is the quantum of the Adequate Protection Obligations, and each of the Debtors hereby waives any right to seek relief, including without limitation, under Bankruptcy Code section 105, to the extent such relief would in any way impair or restrict the rights and remedies of the Global Administrative Agent and the U.S. Lenders set forth in this Interim Order or the U.S. First Lien Documents or, subject to the Prepetition Intercreditor Agreements, the rights and remedies of the Second Lien Parties set forth in this Interim Order, the Second Lien Credit Documents, or the Second Lien Indenture Documents. Any delay or failure of a Prepetition Secured Party to exercise rights under any Prepetition Secured Debt Document or this Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable Prepetition Secured Debt Document. The Prepetition Agents shall be entitled to apply the payments or proceeds of the Prepetition Collateral and the Adequate Protection Collateral in accordance with the provisions of the Prepetition Secured Debt Documents and the Prepetition Intercreditor Agreements and in no event shall any of the First Lien Parties or the Second Lien Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, the Adequate Protection Collateral or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and

protections provided to the First Lien Parties and the Second Lien Parties (subject to the Intercreditor Agreement) under this Interim Order shall survive the Termination Date.

13.      *Lifting of Automatic Stay.*  The automatic stay under Bankruptcy Code section 362 is hereby deemed modified and vacated to the extent necessary to permit the First Lien Parties to apply the proceeds of any Swap Agreement that is terminated or unwound to repay the U.S. Credit Agreement Obligations and/or the Canadian Credit Agreement Obligations (or to setoff against such U.S. Credit Agreement Obligations or Canadian Credit Agreement Obligations) in accordance with the terms of the U.S. Credit Agreement, the Canadian Credit Agreement and the First Lien Pari Passu Intercreditor Agreement (as defined in paragraph 26 below), as applicable.

14.      *Limitation on Charging Expenses against Collateral.*  Subject to and effective upon entry of the Final Order, except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the Adequate Protection Collateral, the Prepetition Agents or the Prepetition Secured Parties pursuant to Bankruptcy Code sections 105(a) or 506(c) or any similar principle of law or equity, without the prior written consent of the affected party, and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Agents or Prepetition Secured Parties.

15.      *Payments Free and Clear.*  Any and all payments or proceeds remitted to the Prepetition Agents on behalf of the Prepetition Secured Parties pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be irrevocable (subject to paragraphs 17 and 22 of this Interim Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of the Final Order, any such claim or charge arising out

of or based on, directly or indirectly, Bankruptcy Code sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b).

16.    *Bankruptcy Code Section 552(b)*.  Each of the Prepetition Agents and the Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and, subject to entry of the Final Order, the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Prepetition Agents and the Prepetition Secured Parties; <u>provided</u> that in the event the Final Order does not provide a waiver of the "equities of the case" exception, any non-Debtor party shall have the right to seek to have the Court apply such exception with respect to any cash utilized during the period that does not constitute Cash Collateral (and any party shall have the right to oppose any such request), <u>provided further</u> that the return of such unencumbered cash shall moot any such request.

17.    *All Parties' Reservation of Rights*.  Subject to the Prepetition Intercreditor Agreements, all parties reserve their rights to argue that, to the extent that any cash payment of interest, fees and expenses as adequate protection to the Prepetition Secured Parties is not allowed under Bankruptcy Code section 506(b) and not allowed on any other basis (including, without limitation, on account of the Debtors' use of Prepetition Collateral), such payments should be recharacterized and applied as payments of principal owed under the applicable Prepetition Secured Debt Documents; <u>provided</u>, <u>however</u>, that the Prepetition Secured Parties reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

18.    *Reservation of Rights of the Prepetition Agents and Prepetition Secured Parties*. Notwithstanding any other provision hereof, the grant of adequate protection to the First Lien Parties pursuant hereto is without prejudice to the right of the Global Administrative Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or

additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Subject to the Intercreditor Agreement, notwithstanding any other provision hereof, the grant of adequate protection to the Second Lien Parties pursuant hereto is without prejudice to the right of the Second Lien Agent or the Second Lien Indenture Trustee to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition Agents or the Prepetition Secured Parties under the Prepetition Secured Debt Documents or under equity or law, and the Prepetition Agents and the Prepetition Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Prepetition Secured Debt Documents and/or equity or law in connection with all Termination Events and Defaults and Events of Default (as defined in the respective Prepetition Secured Debt Documents, and whether arising prior to or after the Petition Date).

19. *Debtors' Reservation of Rights.* The entry of this Interim Order and the grant of adequate protection to the Prepetition Secured Parties and the Prepetition Agents pursuant to the terms hereof shall be without prejudice to the rights of the Debtors to, following the occurrence of the Termination Date, seek authority to use Cash Collateral and the Prepetition Collateral without the consent of the Prepetition Secured Parties and Prepetition Agents, and the Prepetition Secured Parties and Prepetition Agents reserve all of their respective rights with respect to contesting any such motion or request by the Debtors or any other person; provided that the Debtors may not utilize Cash Collateral to seek such authority.

20. *Perfection of Adequate Protection Liens.*

(a)  The Global Administrative Agent and the Second Lien Indenture Trustee are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder. Whether or not the Global Administrative Agent or the Second Lien Indenture Trustee shall, in its respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order. If the Global Administrative Agent or the Second Lien Indenture Trustee determines to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such filings as reasonably requested by the Global Administrative Agent or the Second Lien Indenture Trustee, and the automatic stay shall be modified to allow such filings.

(b)  A certified copy of this Interim Order may, in the discretion of the Global Administrative Agent or the Second Lien Indenture Trustee be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording; provided, however, that the Debtors shall reimburse the Global Administrative Agent or the Second Lien Indenture Trustee or their respective designees for the payment of any stamp, intangibles, recording or similar tax.

(c)  Effective upon entry of the Final Order, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the U.S. First Lien Documents, the Second Lien Credit Documents, the Second Lien Indenture Documents or this Interim Order.

21.  *Preservation of Rights Granted Under this Interim Order*.

(a)  Except as expressly provided in this Interim Order, and subject to the Prepetition Intercreditor Agreements, no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the Prepetition Agents and Prepetition Secured Parties shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551 or, except as set forth in the Prepetition Intercreditor Agreements, subordinated to or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise.

26

(b)     Notwithstanding any order dismissing any of the Cases under Bankruptcy Code section 1112 or otherwise entered at any time, (x) the 507(b) Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such 507(b) Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Global Administrative Agent, the Second Lien Agent or the Second Lien Indenture Trustee, respectively, of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens.   Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Global Administrative Agent, the Second Lien Agent or the Second Lien Indenture Trustee, respectively, of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and (i) the First Lien Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in Bankruptcy Code section 363(m) with respect to all uses of the Prepetition Collateral and all First Lien Adequate Protection Obligations and (ii) subject to the Intercreditor Agreement, the Second Lien Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in Bankruptcy Code section 363(m) with respect to all uses of the Prepetition Collateral  (including the Cash Collateral) (other than Prepetition Collateral constituting setoff rights of the Global Administrative Agent and the U.S. Lenders) and all Second Lien Adequate Protection Obligations.

(d)     Subject to paragraphs 17 and 22 of this Interim Order, the adequate protection payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(e)     Except as expressly provided in this Interim Order, the Adequate Protection Obligations, the 507(b) Claims and the Adequate Protection Liens and all other rights and remedies of the Prepetition Agents and the Prepetition Secured Parties granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of

this Interim Order shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the 507(b) Claims, the other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the Prepetition Agents and the Prepetition Secured Parties granted by the provisions of this Interim Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

22.     *Effect of Stipulations on Third Parties.*  As a result of the Debtors' review of the Prepetition Secured Debt Documents and the facts related thereto, the Debtors have admitted, stipulated and agreed to various matters as set forth in paragraph 4 above and the stipulations and admissions contained in this Interim Order, including without limitation, in paragraph 4 of this Interim Order, shall be binding upon the Debtors and any successor thereto in all circumstances.   The stipulations and admissions contained in this Interim Order, including without limitation, in paragraph 4 of this Interim Order, shall be binding upon all other parties in interest, including any Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (a) the Committee or any other party in interest (including any Trustee), in each case, with requisite standing, has duly filed an adversary proceeding or contested matter, as required under the Bankruptcy Rules (subject in either case to the limitations contained herein, including without limitation, in paragraph 23), challenging the validity, enforceability, priority or extent of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against any of the Prepetition Agents or the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Obligations or the Prepetition Collateral by no later than the date that is (i) in the case of any such adversary proceeding or contested matter filed by a party in interest with requisite standing other than

28

the Committee, seventy-five (75) days after the date of entry of this Interim Order, (ii) in the case of

any such adversary proceeding or contested matter filed by the Committee, sixty (60) days after the

appointment of the Committee and (iii) any such later date agreed to in writing by the respective

Prepetition Agent or Prepetition Secured Party in its sole and absolute discretion (such time period, the *or as ordered by the Court*

"Challenge Period") and (b) an order is entered by a court of competent jurisdiction and becomes final

and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly

filed adversary proceeding or contested matter; provided that, as to the Debtors, all such Claims and

Defenses are hereby irrevocably waived and relinquished as of the Petition Date.  If no such adversary

proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, without

further order of this Court: (x) the Prepetition Obligations shall constitute allowed claims, not subject

to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the

Cases and any subsequent chapter 7 case; (y) the respective Prepetition Agent's liens on the Prepetition

Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding,

perfected and of the priority specified in paragraph 4, not subject to defense, counterclaim,

recharacterization, subordination or avoidance; and (z) the Prepetition Obligations, the respective

Prepetition Agent's liens on the Prepetition Collateral and the respective Prepetition Secured Parties

(and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or

advisors) shall not be subject to any other or further challenge by the Committee or any other party in

interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the

rights of the Debtors' estates, including without limitation, any successor thereto (including, without

limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to

or following the expiration of the Challenge Period).  If any such adversary proceeding or contested

matter is timely filed prior to the expiration of the Challenge Period, the stipulations and admissions

29

contained in this Interim Order, including without limitation, in paragraph 4 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee and any other person, including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter. Nothing in this Interim Order vests or confers on any person, including a Committee or Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates. In the event that there is a timely successful challenge brought pursuant to this paragraph 22, the Court shall retain jurisdiction to fashion an appropriate remedy.

23. *Limitation on Use of Collateral.* The Debtors shall use the proceeds of the Prepetition Collateral solely as provided in this Interim Order. Notwithstanding anything herein or in any other order of this Court to the contrary, no Prepetition Collateral or the Carve Out may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Prepetition Secured Debt Documents, or the liens or claims granted under this Interim Order or the Prepetition Secured Debt Documents; (b) assert any Claims and Defenses against any of the Prepetition Agents or the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the Prepetition Agents and the Prepetition Secured Parties hereunder, or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court without objection from the Global Administrative Agent, provided that, notwithstanding anything to the contrary herein, no more than $100,000 of the Prepetition Collateral or the Carve Out in the aggregate may be used by any Committee to investigate the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral or investigate any Claims and Defenses or other causes action against the Prepetition Agents or any of the

Prepetition Secured Parties; provided, however, that there shall be no such limit on use of cash that is not Cash Collateral with respect to the foregoing.

24.    *Binding Effect; Successors and Assigns.*  The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation, the Prepetition Agents and the Prepetition Secured Parties, any Committee and the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Agents, the Prepetition Secured Parties and the Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Interim Order, the Prepetition Agents and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral or extend any financing to any Trustee or similar responsible person appointed for the estate of any Debtor.  For all adequate protection and stay relief purposes throughout the Debtors' chapter 11 cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date. For the avoidance of doubt, such request will survive termination of this Interim Order.

25.    *Limitation of Liability.*  In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, subject to entry of the Final Order, the Prepetition Agents and the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation

31

and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Agents or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their respective affiliates (as defined in Bankruptcy Code section 101(2)).

26.    *Prepetition Intercreditor Agreements*.  Nothing in this Interim Order shall amend or otherwise modify the terms and enforceability of the Intercreditor Agreement, the Intercreditor Agreement, dated as of December 22, 2011 (as amended, supplemented or otherwise modified, the "First Lien Pari Passu Intercreditor Agreement") between the Global Administrative Agent on behalf of the U.S. Lenders and the Canadian Administrative Agent on behalf of the Canadian Lenders or the Pari Passu Intercreditor Agreement, dated as of June 21, 2013 (as amended, supplemented or otherwise modified, the "Second Lien Pari Passu Intercreditor Agreement") between the Second Lien Indenture Trustee and the Second Lien Agent (collectively the "Prepetition Intercreditor Agreements),  and the Prepetition Intercreditor Agreements shall remain in full force and effect. The rights of the Prepetition Secured Parties shall at all times remain subject to the applicable Prepetition Intercreditor Agreement.

27.    *Provisions with respect to Wells Fargo.*  With respect to the Wells One Commercial Credit Card Agreement, Wells Fargo is authorized to make advances from time to time on behalf of the Debtors with a maximum exposure to Quicksilver of $100,000.  Quicksilver is authorized to continue to use the Wells One Commercial Card Agreement subject to the terms and conditions thereof.  All prepetition charges are authorized and required to be paid.  As security for all indebtedness owed by Quicksilver to Wells Fargo in respect of the Wells One Commercial Credit Card Agreement, Quicksilver caused JPMorgan to issue Wells Fargo a letter of credit to secure the Wells One Commercial Credit Card Agreement.  The letter of credit number is CPCS-910768 (including any

replacement letter of credit issued in support of the Wells One Commercial Credit Card Agreement, the "Letter of Credit") and secures the Wells One Commercial Credit Card Agreement in the amount of $100,000. Wells Fargo has a valid and perfected interest in the Letter of Credit and all proceeds thereof. Wells Fargo is authorized to draw the Letter of Credit in accordance with its terms in the event of any default under the Wells One Commercial Credit Card Agreement or if the Letter of Credit is not extended past the existing maturity date (June 4, 2015) and the Wells One Commercial Credit Card Agreement is still in existence. Collectively, Quicksilver's obligations in connection with the Wells One Commercial Credit Card Agreement and the Letter of Credit are the "Wells Fargo Obligations". So long as the Wells One Commercial Credit Card program remains in effect, Quicksilver shall continue to maintain at all times the Letter of Credit in a minimum amount of $100,000. Wells Fargo has and shall continue to have a valid and perfected, non-avoidable first-priority lien and interest in the Letter of Credit and any proceeds thereof. Such lien shall not be primed by any lien granted to any post-petition lender or other person. To satisfy the requirement that Wells Fargo continue to have a valid and perfected, non-avoidable first-priority lien in the Letter of Credit and any proceeds thereof, Quicksilver grants Wells Fargo a priming lien and security interest pursuant to Bankruptcy Code section 364(d)(1) with respect to any cash collateral from the Letter of Credit and to discharge the Wells Fargo Obligations.

28.     *No Impact on Certain Contracts/ Transactions.*     No rights of any person under Bankruptcy Code sections 555, 556, 559, 560 and 561 shall be affected by the entry of this Interim Order as to any contract or transaction of the kind listed in such Bankruptcy Code sections.

29.     *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of

effectiveness of this Interim Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

30.    *Proofs of Claim.*  None of the Prepetition Agents nor the Prepetition Secured Parties will be required to file proofs of claim in any of the Cases or successor cases, and the Debtors' stipulations in paragraph 4 herein shall be deemed to constitute a timely filed proof of claim.  Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Cases or successor cases shall not apply to the Prepetition Agents or the Prepetition Secured Parties with respect to the Prepetition Obligations. Notwithstanding the foregoing, each of the Prepetition Agents, on behalf of itself and the applicable Prepetition Secured Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in the Cases for any claim allowed herein.  Any proof of claim filed by any Prepetition Agent shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties.

31.    *Final Hearing.*  The Final Hearing is scheduled for April 15, 2015 at 2:00 p.m., prevailing Eastern time, before this Court.  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Akin Gump Strauss Hauer & Feld LLP, 1700 Pacific Avenue, Suite 4100, Dallas, TX 75201, Attn: Charles R. Gibbs, Esq. and Sarah Link Schultz, Esq., proposed counsel to the Debtors; (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Paul N. Heath, Esq., proposed

Delaware counsel to the Debtors; (c) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017, Attn: Steven M. Fuhrman, Esq. and Kathrine A. McLendon, Esq., counsel to the Global Administrative Agent; (d) Fox Rothschild LLP, Citizens Bank Center, 919 North Market Street, Suite 300, Wilmington, DE 19899, Attn: Jeffrey M. Schlerf, Esq., Delaware counsel to the Global Administrative Agent; (e) Latham & Watkins LLP, 885 Third Avenue, Suite 1000, New York, NY 10022, Attn: Mitchell A. Seider, Esq. and David Hammerman, Esq., counsel to the Second Lien Agent; (f) Emmet, Marvin & Martin LLP, 120 Broadway, 32nd Floor, New York, NY 10271, Attn: Edward P. Zujkowski, counsel to the Second Lien Indenture Trustee; (g) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005, Attn: Dennis F. Dunne, Esq. and Samuel A. Khalil, Esq., counsel to the Ad Hoc Group of Second Lienholders; (h) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael Nestor, Esq., Delaware counsel to the Second Lien Agent and the Ad Hoc Group of Second Lienholders; and (i) the Office of the United States Trustee for Region 3, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Jane Leamy, Esq., ~~in each case to allow actual receipt by the foregoing~~ no later than April 6 , 2015 at 4:00 p.m., prevailing Eastern time.

32.   *Jurisdiction.*  This Court shall retain jurisdiction to enforce the terms of this Interim Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

33.    *Controlling Effect of Interim Order*.  To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, or any order entered by the Court approving the Cash Management Motion, the provisions of this Interim Order shall control to the extent of such conflict.

Wilmington, Delaware
Date: March __19__, 2015

THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

36